**Ernesto ADAMES MENDEZ, Ana Bucarelli de Adames, and their conjugal partnership, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 84-0347 (JAF).

United States District Court, D. Puerto Rico.

Jan. 14, 1987.

Freddie Pérez González, Woods Rosenbaum Luckeroth & Perez Gonzalez, San Juan, P.R., for plaintiffs.

Asst. U.S. Atty. Francisco A. Besosa, Daniel F. López Romo, U.S. Atty., San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

We have before us a request for summary judgment filed by the government against plaintiffs. A prior cause of action instituted by coplaintiffs Ana Bucarelli de Adames and the conjugal partnership over a claim for a failure to treat which occurred in the Veterans Administration Hospital's emergency room on March 27, 1982 was dismissed, since it was barred by the statute of limitations. *See* Opinion and Order, docket document No. 57, this file (Cerezo, J.). Here, the United States of America once again raises the barrier of the relevant time-for-suit provision, 28 U.S.C. sec. 2401(b). Defendant also states that this court lacks jurisdiction to entertain a suit for the commission of an alleged intentional tort by the United States.

### Facts

Ernesto Adames-Méndez underwent an extensive eight-hour coronary operation at the Veterans Administration Hospital, San Juan, Puerto Rico. He alleges that, as a result of said operation, he has suffered cerebral damages. Mr. Adames had been admitted to the Veterans Administration Hospital on March 27, 1982 and placed in the intensive care unit. He subsequently underwent open-heart surgery (four coronary artery bypasses). Mr. Adames alleges that he consented to the surgery, to be performed by a doctor named "Amadeo". During the operation, an electrical failure occurred and the patient had to be perfused manually. In their amended complaint, plaintiffs allege that the combination of being connected in excess time to a perfusion (pumping) machine and the electrical failure which affected the operating room were the causes of the brain damage to Mr. Adames. They also claim that his spouse has suffered mental anguish and other related damages. It is stated that this alleged brain damage forced Mr. Adames to drop out of law school and caused Ms. Bucarelli to fall behind in her academic studies in a school of medicine at the Dominican Republic. The conjugal partnership is said to be suffering economic damages in the amount of $500,000.

### Accrual of Claim

The relevant dates to determine whether the above-referred causes of action are tolled are the date in which the injury accrued and the filing date of the administrative claim with the Veterans Administration. To determine the accrual of the action, we look at federal law. *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Cooper v. United States*, 442 F.2d 908 (7th Cir.1971). As stated, plaintiff was operated on March 27, 1982. He was dismissed from the hospital on May 26, 1982. Arguably, his symptoms were noticed during June-July 1982, but it was not until August 1982, when he reported back to law school, that he realized he could not concentrate, all because of loss of memory and other mental depreciation symptoms.[1] The alleged causal relationship between his damages and the operation had been established by March 1983, when a Dr. Bertrán, a plaintiff-retained expert, indicated that the brain disfunctions were due to the perfusion treatment and

---

1. These allegations are highly conclusory. It shall be noted that the complaint in this case was initiated *pro se,* and the same was written by the allegedly brain-damaged patient. Furthermore, he rationally elected to hire a lawyer when the first set of interrogatories from the United States was filed.

alleged lack of oxygen. After the denial of his administrative claim before the Veterans Administration, Mr. Adames sued *pro se* on February 6, 1984, retained a lawyer on May 9, 1984, and also filed a new administrative claim on behalf of his wife Ana Bucarelli and the conjugal partnership composed by Ernesto Adames and Ana Bucarelli.

The administrative claim covering Ms. Bucarelli was filed on standard form 95. The same was filed on June 26, 1984. As a description of the accident, it is stated:

> Claimant is wife of a veteran that suffered a myocardial infarct at the San Juan, Puerto Rico V.A. Hospital. The infarction was a direct result of the negligence of the emergency room personnel who let (sic) the veteran waiting for over two hours, even though it was clear he was a cardiac patient. As a result thereof, the veteran suffered an open heart operation (4 arteries bypass); damage in his left leg nerves and or muscles, aggravation to a lumbar condition, a big scar and permanent heart damage.

### Claim by Spouse and by Conjugal Partnership

The United States requests dismissal of the action initiated by the conjugal partnership and Ms. Bucarelli. The grounds are that they are barred by the statute of limitations, 28 U.S.C. sec. 2401(b) (1968).[2]

▉ An examination of Ms. Bucarelli and the conjugal partnership's administrative claim (Form 95) clearly and unequivocally shows that the nature of the relief sought is based on either the claim dismissed by the court or the claims they voluntarily dismissed. They now claim relief for brain damage and unconsented surgery. None of these were presented before the administrative claim. As stated in *Estate of Santos v. United States*, 525

F.Supp. 982 (D.P.R.1981), the relevant criteria for a correct administrative claim was whether the agency was fully aware of who were the individuals actually pursuing a claim *and* the nature of the total claim. *See Del Valle Rivera v. United States*, 626 F.Supp. 347, 349 (D.P.R.1986). The filing of a proper administrative claim is a jurisdictional requirement and cannot be waived. *Bialowas v. United States*, 443 F.2d 1047, 1049 (3rd Cir.1971); *Del Valle Rivera*, 626 F.Supp. at 348; *Collazo v. United States*, 372 F.Supp. 61, 62 (D.P.R. 1973). A proper claim as to the issue of the brain and mental functions' damages and their effect over the conjugal partnership and Ms. Bucarelli have not been before the agency. Therefore, the same are dismissed.

### Unconsented Surgery

Defendant states that the added claim for damages to Mr. Adames' body based on the alleged fact that he was operated on by a physician to whom he had not given consent, is equivalent to claim on an intentional tort against the United States for which it is immune, citing *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1980), 28 U.S.C. sec. 2680 (1968).

▉ The issue of liability under a Federal Tort Claims Act claim is determined in accordance with the law of the place where the act or omission occurred. 28 U.S.C. sec. 1346. In Puerto Rico, it has been established that unconsented surgery—absent special emergency circumstances surrounding it—*is not* equivalent *per se* to an intentional tort, since the "state of mind" of the intervenor is irrelevant. *See Montes v. FSE*, 87 D.P.R. 199, 206 (1963); *Hernández v. Fonseca*, 96 D.P.R. 715, 718 (1968). The facts relevant to a request for

---

**2.** We can only read the claim now before us as arising under the cause of action based on brain damage. Be it remembered that this court entered an opinion and order where partial judgment was entered dismissing the causes of action of Ms. Bucarelli and the conjugal partnership arising from the incident at the Veterans

Administration Hospital emergency room on March 24, 1982, where a failure to treat was alleged. Also, on March 26, 1985, plaintiffs voluntarily dismissed their claims for leg and scar damages based on negligence resulting from Mr. Adames bypass surgery.

damages for an unconsented operation are (a) whether there was an emergency situation which justified the intervention or (b) plaintiff had knowledge of the operation and consented to the same. The state interest protected in these cases is to guard against non-consented intervention with a person's body, *Rojas v. Maldonado*, 68 D.P.R. 818 (1948). In this case, it is not disputed that Ernesto Adames gave consent to be intervened surgically. Furthermore, the consent signed read that the operation was "to be performed under the direction of *Dr. Amadeo and staff.*" *See* Deposition of Dr. Rodríguez Pérez at 62–63, docket document No. 66 (emphasis added). It is not alleged that plaintiff had expressly chosen a specific doctor to undertake the operation. Furthermore, he does not even know the full name of the person he allegedly elected. The third amended complaint states: "24. Said consent indicated that the operation was going to be performed by a doctor named 'Amadeo', but the operation was not performed by said doctor, being performed instead by a Dr. Gumersindo Blanco." Furthermore, we note that Ms. Bucarelli had waited long hours outside the surgery room, until she finally met with Dr. Gumersindo Blanco. On said occasion she did not reflect shock or concern over the fact that he had realized the operation. See Sworn Statement of Ana Bucarelli de Adames, para. 8, p. 3, docket document No. 75, annex 5. It is obvious that since the time of surgery, the interested parties knew who had performed the operation.

The fact remains that Adames consented to the medical intervention with his body, i.e., surgery. We hereby DISMISS any cause of action for an alleged unconsented surgery.

There remains to be tried before the court Mr. Adames' cause of action for failure to treat while at the emergency ward on March 27, 1982. In addition, Mr. Adames is entitled to attempt to prove that negligence on the part of the government during surgery caused him damages. In this respect, all elements of a tort claim under art. 1802, Civil Code, 31 L.P.R.A. sec.

5141, shall be established. *See Del Valle Rivera v. United States*, 630 F.Supp. 750, 756 (D.P.R.1986); *Morales v. United States*, 642 F.Supp. 269 (D.P.R.1986). Partial judgments consistent with this opinion and order shall be entered forthwith. **A settlement conference shall be held February 11, 1987, at 5:30 P.M.**

IT IS SO ORDERED.