Gloria **PARRA VDA. DE MIRABAL** on her own behalf and as administrator of the legal society that she had with her late husband, Rafael Angel Mirabal; Wilfredo Mirabal; Dolores Mirabal and Rafael Mirabal, Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. No. 85–2268CC.

United States District Court,
D. Puerto Rico.

Dec. 22, 1987.

José M. Rocafort–Bustelo, Santurce, Puerto Rico, for plaintiffs.

Daniel F. López–Romo, U.S. Atty., Eduardo E. Toro–Font, Asst. U.S. Atty., Hato Rey, Puerto Rico, for defendant.

OPINION AND ORDER

CEREZO, District Judge.

This is an action for damages filed by the widow, sister, brother and son of decedent Rafael Mirabal–Alvarado under the Federal Tort Claims Act, 28 U.S.C. Sections 2671, *et seq.*, 28 U.S.C. Section 1346(b). The allegations of the complaint, although more detailed and specific, closely follow the description of the events that underlie the administrative claim presented before the Veterans Administration at San Juan, Puerto Rico. The administrative claim was presented on May 30, 1985. The standard form 95 used for this purpose was drafted and signed by plaintiffs' attorney, José M. Rocafort–Bustelo. The nature of the claim was defined as "[m]alpractice and negligence on the part of the Veterans Administration Hospital and its employees in the treatment and care that was provided for this patient during his hospitalization." Item 13 of Standard Form 95, dated May 30, 1985. (Motion to Dismiss Plaintiffs' New Cause of Action, Exhibit D.) In item 11 of the claim form, plaintiffs, through their attorney, narrated the facts and circumstances attending the injuries and resulting death of the decedent as follows:

Mr. R.A. Mirabal was hospitalized on October 1st, 1984 for dialysis treatment. On Oct. 16th he was operated under local anesthesia & returned to his room & left unattended thus falling from his bed and fracturing his left wrist. His family was not informed & patient was put in an intensive care. From the fall, he also suffered concussions in different parts of his body that prevented him from walking. On December 17, 1984 pacient [sic]

was again left unattended while standing next to his bed and fell receiving a blow to his head and leg. On March 22nd, 1985 his right leg was amputated. On April 21st, 1985 the pacient [sic] died.

The administrative claim referred to concrete situations allegedly occurring during his hospitalization. All of these situations involve physical injury or trauma as a result of falls suffered by the deceased, situations which ultimately led to the amputation of his leg and to his death.

The complaint filed on November 12, 1985 describes the different negligent acts of defendant during the period of hospitalization of the decedent, who was receiving outpatient treatment for renal disease and was admitted to the Veterans Administration Hospital on October 1, 1984 for dialysis treatment. (Paragraphs 5, 6 of the complaint.) Allegations 7, 9, 11, 12, 13, 14, 15, 16, 18 and 19 mirror the description of the injuries contained in the administrative claim. There is nothing in this complaint other than what was already stated in the administrative claim. Both are limited to charges of negligence essentially focused on the falls suffered by the deceased, on the resulting injuries and aggravations of his general condition until he developed gangrene which required the amputation of his right leg that took place on March 22, 1985, and on "the slow collapse and death."

The injuries allegedly resulting from the negligence and malpractice of the Hospital and which worsened his general condition ultimately producing his death are described at paragraphs 9, 11, 12, 13, 14, and 18. All of the injuries and damages allegedly inflicted upon the deceased are physical in nature, for example: fracture to his left wrist, fistula in his neck, pain in his neck, left wrist, left arm and foot, "wart-like" condition to his right leg, bruises to his body, deterioration of his general condition, gangrene and amputation of his right leg. Although it is not mentioned in the complaint, the cause of death according to the death certificate presented as Exhibit "F" in the "Motion to Dismiss Plaintiffs' New Cause of Action," filed on June 19, 1987, was final stage renal disease, sus-

pected meningitis and cardio-respiratory arrest.

It is with this set of allegations that plaintiffs entered the pretrial conference stage of their lawsuit. The minutes of the Pretrial Conference held on June 5, 1987 reveal that plaintiff's attorney, Mr. Rocafort–Bustelo, informed the Court that the decedent's record had been examined by a group of experts who found no negligence as to the medical aspect, to which he referred as being "in order." This assertion by the attorney was reaffirmed by plaintiffs in their reply of July 10, 1987 to the dismissal motion where they stated at paragraph 5 that: "Plaintiffs evaluated the medical records that were provided by the VA and *according to them* the treatment that was provided to the patient was proper." (Emphasis in original.)

It would seem that these admissions by plaintiffs and their attorney would have put an end to this malpractice action. However, in the statement of factual theory made by plaintiffs at the Pretrial Order filed on June 3, 1987 and again in their reply to a dismissal motion filed by defendant, plaintiffs have managed, or at least attempted, to introduce allegations of injuries based on circumstances never mentioned either at the administrative or the judicial level before. It is the introduction of these allegations that triggered defendant's motion to dismiss on the basis that a new claim, which was never presented before at the administrative agency and which was never mentioned in the allegations of the complaint, was now being injected as an informal amendment. A review of the statement of plaintiffs' factual theory at pages 2–4, inclusive, of the Pretrial Order of June 3, 1987, reveals a day-to-day outline of the physical injuries and trauma to the neck, allegedly suffered by the decedent which deteriorated his physical condition and culminated in his death. After two and a half pages of such descriptions, plaintiff unobtrusively included the following statement in their theory: "Patient did not receive any psychiatric or psychological evaluation, treatment or counseling during his hospitalization." A more vivid statement of what plaintiffs really

mean by this appears in their reply to the motion to dismiss filed on July 19, 1987, where they state: "The records revealed that, even though, the patient was refusing the medical treatment offered the hospital's medical and paramedical personnel did not attempt to correct and cure this situation by providing psychlogical and psychiatric treatment to a patient who was committing *suicide or self destruction under their supervision."* (Emphasis in original.)

In its motion to dimiss defendant correctly charges that nowhere in the documents presented with the administrative agency claim was psychological or psychiatric treatment ever mentioned and that no causal relationship or damages were mentioned therein as a consequence of a lack of psychological or psychiatric treatment.

The dismissal motion cites the case of *Adames Méndez v. United States,* 652 F.Supp. 356 (D.P.R.1987) where the Court barred a claim for brain damage which had not been included in the administrative claim previously filed. On September 28, 1987 the U.S. Magistrate issued a Report and Recommendation favorable to plaintiffs which essentially concludes that this is not a new claim but only an alternative theory of liability which did not have to be spelled out in specific terms before the agency. The U.S. Magistrate also refers to the purpose of the statute, and, generally, to the criteria used for determining that an administrative claim is proper and adequate. The common denominator found in all of the cases cited by the U.S. Magistrate is that the purpose of the statute, 28 U.S.C. Section 2675(a),[1] is served when the claimant sufficiently apprises the agency of the facts underlying the claim to allow an investigation of the same and a determination whether to settle or litigate. *See Rise*

*v. United States,* 630 F.2d 1068, 1071 (5th Cir.1981); *Keene Corp. v. United States,* 700 F.2d 836, 842 (2nd Cir.1983); *Bush v. United States,* 703 F.2d 491, 495 (11th Cir. 1983). The difficulty with the U.S. Magistratre's analysis, although based on correct legal principles, is that it does not assess the particular administrative claim to determine in effect whether it brought to the attention of the Veterans Administration sufficient facts which would place it under notice and allow it to investigate a claim which charges that the decedent was permitted to commit suicide by his refusal to receive treatment, a situation which according to the new claim necessarily required that decedent be afforded psychological or psychiatric treatment. As mentioned earlier, the description of the claim made before the agency as well as the allegations of the complaint are highly specific in nature, referring only to falls sustained while unattended and to resulting physical injury and trauma which caused his general condition to deteriorate to such an extent that amputation of one of his legs was required. Nowhere were any facts mentioned which could remotely call the agency's attention to a claim based on the suicide theory. Neither was there any allegation of mental disease or of a mental disorder for which he was being treated.

The case of *Mellor v. United States,* 484 F.Supp. 641 (D.Utah 1978) which ruled that a "claim" presented under the Federal Tort Claims Act is not an equivalent to a "legal cause of action" that may eventually be articulated by counsel in the course of a subsequent lawsuit is readily distinguishable from the present action. Although the government has repeatedly referred to the new claim as a "new cause of action," the flaw in plaintiff's position does not rest on their having raised new theories of lia-

---

1. An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or death caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

bility. The fatal flaw lies in their failure to sufficiently apprise the agency of those facts which would support their "suicide claim," they chose to cast their claim in the manner in which they did both in the administrative claim and in the complaint, to wit: by narrating circumstances which were related to specific injuries and trauma suffered on specific dates and which ultimately deteriorated the general condition of a person who was blind, diabetic and on dialysis treatment for kidney disease. They could have easily brought to the attention of the Veterans Administration that decedent was refusing the treatment which was offered by the hospital and that this was allowed to happen while he slowly committed suicide. These facts are totally different and cannot possibly be inferred from those which were detailed in the administrative claim. It should also be noted that the administrative claim in *Mellor* was not prepared by the plaintiffs' attorney nor did *Mellor* attempt to introduce his claim of unconsented surgery two years after the filing of the complaint and after his own experts had rejected the basis of his malpractice suit, as was the case here.

It should be noted that *Bush v. United States, supra* at 495, which adopted the view expressed by other courts that a claimant does not have to affirmatively plead each theory of liability in the administrative claim if it fairly apprises the agency of the facts leading to the injury, held that a court lacked jurisdiction to entertain a "lack of informed consent" claim which had not been submitted to the Veterans Administration. The court noted that neither the claim nor the attached medical evaluation contained any challenge to the consent form signed by Mr. Bush prior to the surgery and that there was no allegation that the doctors failed to disclose the risks involved in the medical procedure.

Since the new claim that plaintiffs advanced for the first time during the pretrial conference, alleging that decedent was allowed to kill himself by refusing treatment at the hospital, was never presented before the agency and since plaintiffs have twice clearly manifested during these proceedings that there was no negligence in the

medical treatment given to the deceased, the Court hereby GRANTS the Motion to Dismiss filed by the United States of America. Separate Judgment shall issue.

SO ORDERED.