USCA1 Opinion

 

 [Not For Publication] United States Court of Appeals For the First Circuit ____________________ No. 96-1702 MARIA M. LOPEZ-DE ROBINSON, Plaintiff, Appellant, v. UNITED STATES OF AMERICA, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jaime Pieras, Jr., U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Raul Barrera Morales with whom Jesus Hernandez Sanchez and ______________________ _________________________ Hernandez Sanchez Law Firm were on brief, for appellant. __________________________ Fidel A. Sevillano Del Rio, Assistant United States Attorney, _____________________________ with whom Guillermo Gil, United States Attorney, was on brief for ______________ appellee. ____________________ MAY 13, 1997 ____________________ Per Curiam. Plaintiff, a widow, appeals from the Per Curiam.  __________ district court's award of $50 thousand under the Federal Tort Claims Act (FTCA), 28 U.S.C. 2671 et seq., to compensate her for pain and suffering due to the failure of the Veterans Administration Hospital in San Juan to admit her ill husband a few days prior to his death. She seeks additional damages, arguing that several of the district court's factual findings are clearly erroneous. She takes particular issue with the court's finding that prompt hospitalization would not have saved her husband's life. She also argues that the court erred in concluding that her late husband's estate was not entitled to any recovery because it was not properly a party to the suit. I We recite the facts as found by the district court after the three-day bench trial. In May 1989, Vance Robinson, a 64-year-old veteran, visited Dr. Luis Marrero, who ordered laboratory tests. The tests suggested that Robinson had liver cancer. On Friday, July 7, 1989, Robinson went to the VA Hospital in San Juan complaining of a host of symptoms, including a grossly enlarged abdomen (ascites) and acute stomach pains. The intake physician, Dr. Sylvia Fuertes, diagnosed Robinson as having ascites and an occult neoplasm, but did not note the ascites on his medical record. She did -2- 2 not believe that Robinson's case was an emergency, but she recommended that he be admitted immediately as an elective admission. There were no available beds, however, and so she told Robinson to return on Monday. Robinson went to the admissions office of the hospital on Monday at 9:00 a.m. He was not re-examined. He waited there all day, but was told there were no beds available. The same thing happened on Tuesday. That evening, Robinson was taken to the emergency room at San Pablo Hospital, where he was admitted as a patient. The diagnosis was ascites, suspected liver cancer, anemia and hepato-renal syndrome. A CT scan revealed an enlarged liver due to lesions suggestive of metastatic cancer. On July 18, Robinson discharged himself from the hospital. He died the next day. No biopsy was ever performed to confirm the diagnosis of suspected liver cancer, and no autopsy was performed at the time of death. Liver cancer was listed as the cause of death on the death certificate. Robinson's widow, the plaintiff here, filed an administrative claim in her name against the United States with the Department of Veterans Affairs. The claim was denied, and she filed a complaint in federal court within six months. -3- 3 Over two years after Robinson's death, plaintiff had the body exhumed so that Dr. Yocasta Brugel could prepare a forensic report. Dr. Brugel indicated that she found no evidence of liver cancer and that Robinson had died of myocarditis, a rare heart ailment which seldom leads to death. The autopsy was admitted into evidence without objection. However, Dr. Brugel did not appear at trial to testify. The district court found that either the autopsy report was totally unreliable, or, in the alternative, that the autopsy had been performed on someone other than Robinson. The court also found that the slides of the liver on which the report was based were not those of Robinson's liver. The district court concluded that the hospital's failure to admit Robinson on Friday evening did not violate acceptable medical standards. However, it found that Robinson should have been re-examined when he returned to the hospital on Monday, to ensure that his condition had not deteriorated to emergency status, and concluded that this omission did violate acceptable medical standards and caused pain and suffering to Robinson and his wife. The court also found that admitting Robinson to the hospital on Friday, Monday or Tuesday would not have saved his life but would have permitted palliative treatment to ease his pain and suffering. -4- 4 The court awarded plaintiff $50 thousand for her pain and suffering as she watched her husband's condition deteriorate during the three days before he was finally admitted to a hospital. The district court also indicated that it would have awarded an additional $50 thousand for Robinson's pain and suffering if his estate had been named as a plaintiff. Plaintiff appeals on several grounds. She argues that the district court's finding that the VA Hospital's failure to admit Robinson was not the cause of death is clearly erroneous, as was the district court's finding that the autopsy report was totally unreliable. She also argues that the court erred in refusing to award pain and suffering damages to the decedent's estate: she contends that under Puerto Rico law, when a man dies intestate (as did Robinson) his widow and children are his heirs. She concludes that she and her sons should have received the $50 thousand the district court indicated it would have awarded for Robinson's pain and suffering. II Factual Findings ________________ We review the district court's findings of fact for clear error. Irving v. United States, 49 F.3d 830, 835 (1st ______ _____________ Cir. 1995); see also Fed. R. Civ. P. 52(a). In this case, ________ there is a significant amount of support in the record for -5- 5 the district court's factual determinations, which therefore are not clearly erroneous. The district court's finding that the hospital's failure to admit Robinson was not the cause of his death is supported by the testimony of Dr. Figueroa, the government expert in cardiology. He testified that, in his opinion, at the time Robinson went to the VA Hospital on July 7, there was nothing that could have been done to prevent Robinson's death on the 18th; at that point the hospital could have done nothing more than to have made him comfortable. There is also evidence in support of the district court's conclusion that the autopsy report was not based on an examination of Robinson's liver. The liver from which the slides were taken was of normal size, while Robinson's liver had been enlarged. The slides of the liver showed no evidence of severe liver disease such as metastatic cancer. Instead, they indicated a fatty liver, a much less serious condition. However, all of the clinical data indicated that Robinson was suffering from severe liver disease at the time he died. The testimony of Dr. Marrero indicates that Robinson likely had severe liver disease as early as May 1989. Dr. Ramirez, the government expert in pathology, testified that there was ample clinical, radiological and laboratory evidence that Robinson suffered from severe liver disease, but that there was no indication of this in the -6- 6 autopsy slides. Furthermore, Dr. Ramirez testified that descriptions in the autopsy report of other organs were not what one would have expected given Robinson's medical history. For example, Robinson had dilated veins in his esophagus butthere wasno mention ofthis in theautopsy report. Exhaustion of Administrative Remedies _____________________________________ The district court held that it could not award damages for Robinson's pain and suffering because his estate did not present a claim to the proper administrative agency and therefore did not exhaust its administrative remedies. Review of this legal conclusion is de novo. Roche v. Royal _____ _____ Bank of Canada, 109 F.3d 820, 827 (1st Cir. 1997). ______________ The Federal Tort Claims Act provides that "no action shall be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied . . . ." 28 U.S.C. 2675(a). In this case the appropriate agency is the Veterans Affairs Department. The determination of when a claim is deemed presented is made pursuant to federal regulations, which require the submission of written notification of the incident and a claim for money damages in a specific sum. 28 C.F.R. 14.2(a). The purpose is to encourage settlement: -7- 7 if the agency knows exactly what the claimant seeks, there is more likely to be a settlement. Plaintiff filed an administrative claim with the Department of Veterans Affairs in which she identified herself but not her late husband's estate as claimant.1 She now argues that this satisfied the exhaustion requirement with respect to both her claims and those of the estate. A similar argument was rejected in Estate of Santos v. United ________________ ______ States, 525 F. Supp. 982, 986 (D.P.R. 1981). The court there ______ held that each person seeking personal damages under the FTCA must file an individual claim, and that a claim must put the agency on notice of who was actually pursuing the claim and the amount of the claim. Id.; see also Adames Mendez v. ___ ________ _____________ United States, 652 F. Supp. 356, 358 (D.P.R. 1987), aff'd, _____________ _____ 873 F.2d 1432 (1st Cir. 1989) (tbl.); Del Valle Rivera v. _________________ United States, 626 F. Supp. 347, 348-49 (D.P.R. 1986). _____________ We agree. Allowing one claimant's exhaustion of her administrative remedies to satisfy the exhaustion requirement for other possible claimants would make it extremely difficult for the agency to know the value of the suit, thus making settlement less likely. Del Valle Rivera, ________________ 626 F. Supp. at 348-49. The decision of the district court is affirmed. ________  ____________________ 1. The administrative claim was not included in the appellate record, but counsel conceded at oral argument that Robinson's estate was not named as a claimant. -8- 8