**Dale MUNSILL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 97–041L.**

United States District Court,
D. Rhode Island.

July 29, 1998.

As Amended Sept. 3, 1998.

Stephen R. White, Pucci, Goldin & Merolla, Providence, RI, for Plaintiff.

Robin E. Feder, U.S. Attorney's Office, Providence, RI, for Defendant.

## OPINION AND ORDER

LAGUEUX, Chief Judge.

■ This matter is before the Court on the motion of defendant, United States of America ("defendant"), for summary judg-

ment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The case arises out of a slip and fall which occurred outside the Charlestown, Rhode Island Post Office (the "Post Office") during a snowstorm. Plaintiff, Dale Munsill ("plaintiff"), brought a civil action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346 (the "FTCA"), seeking damages for injuries suffered as a result of her fall.[1]

For the reasons that follow, this Court concludes that plaintiff's claim is without merit. As a result, defendant's motion for summary judgment is granted.

## I. Background

The basic facts are undisputed except where noted. On March 2, 1996 snow began to fall in the early morning hours and continued to accumulate throughout the day. The Post Office, located at the corner of Old Post Road and Sheila Drive in Charlestown, was open for business and maintained its normal business hours. At some time between 11:00 a.m. and 11:40 a.m. plaintiff arrived at the Post Office to conduct her postal business. By the time plaintiff arrived, the snow had accumulated to about three inches. The snow was still falling when plaintiff proceeded toward the Post Office entrance. Plaintiff fell on the way into the premises, injuring her left knee. Prior to the fall, the Post Office had not salted, sanded or made any snow removal efforts. It continued to snow for several hours after plaintiff fell. There was a total accumulation of approximately eight inches of snow in Charlestown that day.

In mid 1996 plaintiff filed an administrative claim for damages in the amount of $750,000, in order to fulfill the jurisdictional requirement of the FTCA. *See* 28 U.S.C. § 2675(a). The basis of the claim was that the personal injury to plaintiff was allegedly proximately caused by the negligence of postal employees in failing "to plan for, to supervise, or to execute snow removal from their front walkway on March 2, 1996." On

January 31, 1997, after defendant neither accepted nor rejected plaintiff's claim, plaintiff filed a formal Complaint with this Court. The one count Complaint alleged that "[d]efendant's employees were negligent in that they allowed the front entrance and exit of the Charlestown, Rhode Island United States Post Office to excessively accumulate with heavy, wet, packed and slippery snow during operational hours, and failed to use reasonable care in supervising the maintenance, clearing, and keeping of said front entrance and exit in good order for the use of persons entering and exiting the building. . . ."

On January 26, 1998, following the close of discovery, defendant filed a motion for summary judgment. In its motion, defendant argues that there is no genuine issue as to any material facts and that it is entitled to judgment as a matter of law because it was not obligated to clear the snow until a reasonable time after the cessation of the storm. Furthermore, it argues that plaintiff's later allegation (which arose during discovery) that the dirt beside the walkway was not "flush" with the walkway, and that this "defect" was hidden by the snow and thus caused her to fall, cannot be asserted as part of her claim because it changes the nature of the claim. Plaintiff objected to defendant's motion on February 9, 1998. On March 30, 1998, this Court held a hearing on the motion for summary judgment and following oral argument, took the matter under advisement.

On April 1, 1998, plaintiff filed a Motion to Certify to the Rhode Island Supreme Court the question of whether:

Rhode Island law provides a remedy to a business patron who slips and falls upon business premises as a result of snow fall while the snow is falling, or does the legal occupier of business premises have a period of time after the snow fall ends before any potential liability arises from the presence of snow on the premises.

In plaintiff's memorandum of law in support of her Motion to Certify, she asserted that defendant's duty in this case transcends any

---

**1.** The "United States" is the proper defendant for FTCA purposes because the United States Postal Service leased the land and building in question, and the alleged negligent act or omission was by

employees of the United States Post Office, Charlestown, while acting within the scope of office or employment. *See* 28 U.S.C. § 1346(b)(1).

snow storm because the combination of a hole and an accumulation of snow created an unreasonable hazard to plaintiff in these circumstances. Defendant responded to this motion on April 6, 1998, contending that this Court has been provided with sufficient guidance from the Rhode Island Supreme Court, as well as other "reasoned authority", and, therefore, can decide the question without certification. On June 15, 1998, this Court held a hearing on plaintiff's Motion to Certify and it was denied from the bench.

The Court having considered the arguments of the parties and all other materials submitted, now deems that the motion for summary judgment is in order for decision.

## II. Standard for Decision

Federal R. Civ. P. 56(c) sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.'" *Id.*

On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.,* 777 F.Supp. 167, 169 (D.R.I.1991).

## III. Administrative Notice

The FTCA is the United States' waiver of its sovereign immunity from tort suits. *See* 28 U.S.C. § 1346(b). Under the FTCA, the federal government becomes liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The district courts have exclusive jurisdiction of civil actions against the United States "for money damages,...injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment". 28 U.S.C. § 1346(b)(1). Therefore, because the United States waives immunity, opening itself up to a vast number of tort claims, the FTCA has set forth an administrative procedure that must be followed, as a predicate to suit.

■ To maintain an action against the United States, a claimant must satisfy the statutory notice requirement of 28 U.S.C. § 2675, which states that before an action can be instituted, "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a).[2] This process is intended to provide sufficient notice to the United States so that it can investigate the alleged incident of negligence. *Lopez v. U.S.,* 758 F.2d 806, 809–10 (1st Cir.1985). Thus, § 2675 emphasizes that an agency must receive "enough information" in the claim filed in order to begin investigation. *Santiago-*

---

2. Failure of an agency to respond within six months after an administrative claim is filed shall be deemed a final denial. 28 U.S.C. § 2675(a).

*Ramirez v. Secretary of Dep't of Defense*, 984 F.2d 16, 19 (1st Cir.1993).

■ The purpose of the notice requirement is to maintain order and efficiency, " 'to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States.' " *Rise v. U.S.*, 630 F.2d 1068, 1071 (5th Cir.1980) (quoting S.Rep.No. 1327, 89th Cong., 2d Sess. reprinted in (1966) U.S.Code Cong. & Ad. News, pp. 2515, 2516). With this purpose in mind, the First Circuit has held that a claimant satisfies the statutory notice requirement when he or she provides "a claim form or 'other written notification' which includes (1) sufficient information for the agency to investigate the claims, and (2) the amount of damages sought." *Santiago–Ramirez*, 984 F.2d at 19, citing *Lopez*, 758 F.2d at 809–10 (internal citations omitted). While the First Circuit maintains a flexible approach to the notice requirement, acknowledging that "the law was not intended to put up a barrier of technicalities to defeat...claims," its leniency does not eliminate the need to fulfill the minimum statutory requirements. *Lopez*, 758 F.2d at 809; *see Santiago–Ramirez*, 984 F.2d at 19.

■ In the present case, plaintiff's administrative claim asserted that defendant failed "to plan for, to supervise or to execute snow removal from their front walkway on March 2, 1996." Plaintiff stated that "the accumulated snow was not cleared, shoveled, swept, removed, salted, sanded or treated in any manner", and that, upon approaching the entrance, plaintiff "slipped and fell ... severely injuring her left knee." After filing the Complaint in this Court, and after conducting some discovery, plaintiff has asserted that, in addition to the snow accumulation, there was an "eroded sidewall"or "hole" near the walkway which caused her to fall and that defendant failed to disclose or repair this "condition".

Defendant argues that plaintiff may not now pursue this claim of alleged negligence relating to the "hole" or "eroded sidewall", because such allegation presents new and different facts from those presented in plaintiff's administrative claim. Therefore, defendant contends plaintiff did not provide the requisite notice of this claim. Thus, the Court is presented with the threshold issue of whether plaintiff can expand the allegations in the claim in this way in an attempt to create a disputed issue of material fact.

While the First Circuit, as noted *supra*, approaches the FTCA notice requirement flexibly, that Court has drawn a distinction between allowing a claimant to change or add legal theories after the filing of an administrative claim and allowing a claimant to change or add facts. *See Santiago–Ramirez*, 984 F.2d at 19–20. Defendant concedes that adding or changing a legal theory of liability does not generally adversely affect the statutory notice requirement or impede the Government's investigation when sufficient information has already been provided in the claim about the facts. That is because the information supplied in the claim provides the Government with notice of the possibility of having to defend against any theory of liability based on the facts stated. For example, in *Santiago–Ramirez*, the claimant set forth the facts in the administrative claim, but failed to mention that the claim was made under the FTCA for negligent or tortious conduct. The Court held that the notice was sufficient, and allowed the plaintiff to assert the various legal theories of liability so long as they flowed from the facts already put forth in the administrative claim. However, the Court emphasized that "[t]he appellant's claim is limited to the information included in the letter which gave the agency notice of her claim." *Santiago–Ramirez*, 984 F.2d at 20. Similarly, in *Rise*, the Court held that new theories of why the facts constituted tortious conduct could be added. It stated that the purpose of the notice requirement will be served "as long as a claim brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant." *Rise*, 630 F.2d at 1071.

By contrast, adding facts after the administrative claim is filed deprives the Government of the opportunity to properly investigate or settle claims, and thus does not satisfy the first element of the notice

requirement, noted *supra.* For example, in the *Bush* case the Court held that an informed consent allegation could not be pursued where the facts set forth in the administrative claim did not address the doctor's failure to disclose the risks of the medical procedure. *Bush v. U.S.,* 703 F.2d 491, 495 (11th Cir.1983). In this situation, the Government was not properly apprised of its potential liability by the facts set forth in the claim; therefore, a later claim not supported by the original set of facts could not be asserted. *See also, Deloria v. Veterans Admin.,* 927 F.2d 1009, 1012 (7th Cir.1991) ("a plaintiff cannot 'present one claim to the agency and then maintain suit on the basis of a different set of facts' ")(quoting *Dundon v. U.S.,* 559 F.Supp. 469, 476 (E.D.N.Y.1983)); *Parra VDA De Mirabal v. U.S.,* 675 F.Supp. 50, 53 (D.P.R.1987) (suicide charge could not be considered in FTCA action, because the "facts are totally different and cannot possibly be inferred from those which were detailed in the administrative claim").

In light of this established law, this Court concludes that defendant should not be required to defend against the added charge asserted. Plaintiff has failed to provide sufficient information in her administrative claim to put defendant on notice that it should investigate the allegation that there was "an eroded sidewall" or "hole" near the walkway at the time of the incident. Plaintiff's claim here did not even suggest that there was a "defect" on the premises near the walkway which caused her to fall. The claim focused solely on defendant's failure to remove the snow on the walkway as the cause of plaintiff's fall. Furthermore, even when plaintiff filed a Complaint in this Court, she failed to indicate that there was any imperfection in the walkway or land, aside from the accumulation of snow. Clearly, the allegation of a hole covered by the snow was an afterthought that, having been omitted from the administrative claim, cannot now be posited.

In short, the only reasonable view of plaintiff's claim is that she alleged she fell *on* the walkway because of accumulated snow. It cannot be reasonably inferred from that claim that she stepped in a "hole" off to the side of the walkway. Defendant should not be required to investigate facts which were not stated or cannot be reasonably inferred, from the allegations in the claim. If a plaintiff can supplement the stated facts when the case gets to Court, the administrative claim process requirements become meaningless.

Thus, while, as noted *supra,* the First Circuit exercises a lenient approach to the FTCA's notice requirement, such leniency clearly does not extend to allowing a plaintiff to circumvent the statutory requirement by adding a completely different set of facts to support liability. Therefore, this Court concludes that plaintiff's administrative claim did not provide sufficient notice that there was a defect near the walkway that caused plaintiff's fall.

Since this new and additional allegation will be disregarded, the only issue remaining is whether defendant had a duty to remove snow from the walkway leading to the entrance of the Post Office during a snowstorm.

IV. Duty to Remove Snow and Ice

Plaintiff's contention is that defendant was negligent for failure to "plan for, to supervise or to execute snow removal from their front walkway on March 2, 1996." In her Complaint, plaintiff asserts that defendant's employees were negligent for allowing the entrance and exit of the Post Office to have an accumulation of "several inches of unshovelled, heavy, wet, packed and slippery snow" during operational hours.

Under the FTCA, in determining a defendant's liability, the Court must act "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Thus, when deciding whether defendant had a duty to remove snow during a snowstorm, the Court must examine Rhode Island law.

In order to prevail on a claim of negligence in Rhode Island, a plaintiff must prove that: (1) the defendant owed the plaintiff a legal duty to refrain from negligent activities; (2) the defendant breached that duty; (3) the breach proximately caused harm to the plaintiff; and (4) there was actual loss or damage resulting. *Splendorio*

*v. Bilray Demolition Co., Inc.*, 682 A.2d 461, 467 (R.I.1996).

Defendant contends that summary judgment should be granted because it had no legal obligation to remove snow and ice during the snowstorm in this case. In Rhode Island, "whether . . . a duty exists in a particular factual situation is a question of law for the court's determination." *Mallette v. Children's Friend and Serv.*, 661 A.2d 67, 70 (R.I.1995). The Rhode Island Supreme Court has lamented "the difficulty of crafting a workable test to determine whether a duty exists in a particular case." *Ferreira v. Strack*, 636 A.2d 682, 685 (R.I.1994). The Court counsels consideration of " 'all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations and notions of fairness.' " *Mallette*, 661 A.2d at 70 (quoting *Kenney Mfg. Co. v. Starkweather & Shepley, Inc.*, 643 A.2d 203, 206 (R.I.1994)). While the foreseeability of harm to the plaintiff resulting from the defendant's conduct is the "linchpin" in the duty inquiry, *Splendorio*, 682 A.2d at 466, "foreseeability of injury does not, in and of itself, give rise to a duty." *Ferreira*, 636 A.2d at 688 n. 4.

The seminal case in Rhode Island addressing the duty to remove snow is *Fuller v. Housing Authority of Providence*, 279 A.2d 438 (R.I.1971). In *Fuller*, the Rhode Island Supreme Court rejected the "Massachusetts Rule", which provides that a landlord has no duty to remove any natural accumulation of snow and ice from common passageways or stairs. *Id.*, 279 A.2d at 440; *see Woods v. Naumkeag Steam Cotton Co.*, 134 Mass. 357 (1883). Instead, the Court adopted the "Connecticut Rule" which states that a landlord does owe a duty to his tenant "to use reasonable care to see that the common areas are kept reasonably safe from the dangers created by an accumulation of snow and ice attributable to purely natural causes." *Fuller*, 279 A.2d at 440. The Court reasoned that "a landlord, armed with an ample supply of salt, sand, scrapers, shovels and even perhaps a snow blower, can acquit himself quite admirably as he takes to the common passageways to do battle with the fallen snow,

the sun-melted snow now turned to ice, or the frozen rain." *Id.* at 440. However, the Court emphasized that "a landlord is not a guarantor for the safety of his tenants. . . ." *Id.* at 441. Thus, the landlord must be given "a reasonable time after the storm has ceased to remove the accumulation of snow or ice" or to implement safety measures. *Id.* at 441. The Court later re-emphasized the impracticality of mandating snow removal efforts before the cessation of a snowstorm, stating, "[a] landlord is not required to be at his property, shovel in hand, catching the flakes before they hit the ground." *Barenbaum v. Richardson*, 114 R.I. 87, 328 A.2d 731, 734 (1974).

Plaintiff argues that the reasonable-time-after-the-snowstorm rule of *Fuller* and *Barenbaum* should not apply in this case because defendant is operating a business enterprise. Plaintiff posits that the duty owed a tenant by a landlord is different than the duty owed a business invitee by a business owner. Therefore, she contends that defendant should not be given a reasonable time after the snow ceases to fall to remove it, but rather must remove the snow *during* the snowstorm.

While there is no Rhode Island case specifically addressing a business invitor's duty of snow removal during a snowstorm, the vast majority of cases decided elsewhere have rejected the special duty that plaintiff suggests. The majority of jurisdictions follow what New York has labeled the "storm in progress" doctrine, where an occupier of business premises "is afforded a reasonable time after the cessation of the storm or temperature fluctuations . . . to correct the situation." *Olejniczak v. E.I. Du Pont De Nemours and Co.*, 998 F.Supp. 274, 280 (W.D.N.Y.1998). *See also Sinert v. Olympia Dev. Co.*, 38 Conn.App. 844, 664 A.2d 791 (1995) (holding that absent unusual circumstances, defendant may await the end of a storm before removing snow and ice from walks and steps; defendant need not engage in impractical effort with uncontrollable forces, and commercial property owner status does not warrant a higher duty of care than that imposed upon private property owner); *Fusco v. Stewart's Ice Cream Co.*,

203 A.D.2d 667, 610 N.Y.S.2d 642, 643 (N.Y.App.Div.1994) (owner of convenience store had reasonable time after cessation of storm to correct icy conditions; commercial nature of store did not create heightened duty to correcting storm-created hazardous ice and snow conditions). *Phillips v. Superamerica Group, Inc.,* 852 F.Supp. 504, 507 (N.D.W.Va.1994), *aff'd* 54 F.3d 773, 1995 WL 309310 (4th Cir.1995) (gas station was under no duty to remove snow from premises during storm, and thus was not liable to invitee for injuries sustained in slip and fall); *Mattson v. St. Luke's Hosp. of St. Paul,* 252 Minn. 230, 89 N.W.2d 743, 745–46 (1958) ("[r]easonable care for the safety of an invitee does not require an inviter to engage in an unending and impractical, if not useless, contest with the uncontrollable forces of nature while a storm is in progress"; therefore, absent extraordinary circumstances, hospital could await end of freezing rain and sleetstorm, and had reasonable time thereafter to remove ice and snow from its entrance).

Furthermore, several courts follow an even stricter rule—the so-called "natural accumulation rule"—which states that, absent a defect, a business owner owes absolutely no duty to remove the natural accumulation of snow and ice during or after a snowstorm. *See Athas v. U.S.,* 904 F.2d 79, 81 (1st Cir. 1990) (finding that where plaintiff slipped leaving Post Office, defendant owed no duty, under Massachusetts law, to remove the natural accumulation of snow and ice reasoning that "there must be a defect, apart from a natural accumulation of water, or ice, or snow, in order to hold a landowner liable for negligence"); *Dailey v. Mayo Family Limited Partnership,* 115 Ohio App.3d 112, 684 N.E.2d 746, 748 (1996) (stating that "the law is clear . . . that an owner of land ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow from the walkways on the premises or to warn the invitee of the dangers associated therewith"). The Court is aware of only one jurisdiction, Michigan, that holds that the reasonableness of a business invitor's failure to remove snow

and ice during a storm may be a question for the jury. *See Lundy v. Groty,* 141 Mich.App. 757, 367 N.W.2d 448 (1985).[3] Michigan's basic standard for snow removal is that in *any* invitor-invitee relationship, the invitor has a duty to take reasonable measures "within a reasonable time after an accumulation of ice and snow". *Quinlivan v. Great Atlantic & Pacific Tea Co. Inc.,* 395 Mich. 244, 235 N.W.2d 732, 740 (1975).[4]

This Court concludes that the Rhode Island Supreme Court, when the occasion presents itself, will follow the majority approach discussed *supra,* and will apply the *Fuller* and *Barenbaum* rule to a business owner, i.e., allowing that owner to have a reasonable time after the cessation of a storm to remove snow from walkways and entrances. A business invitor, like a landlord, is not an "insurer[.]" *See McVeigh v. McCullough,* 96 R.I. 412, 192 A.2d 437, 441 (1963). Indeed, the Supreme Court has noted that an occupier of land is only bound to use "*ordinary care* and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, express or implied, for the transaction of business, or for any other purpose beneficial to him." *DeMello v. St. Thomas Apostle Church Corp. Of Warren,* 91 R.I. 476, 165 A.2d 500, 502 (R.I.1960) (emphasis added) (quoting 4 Shearman & Redfield, Negligence (Rev.Ed.) § 779, p. 1783); *See Reddington v. Getchell,* 40 R.I. 463, 101 A. 123, 125 (1917). Requiring a business owner to remove snow before a storm ends would hold him to an extraordinary standard of care, forcing him, in effect, to become an insurer of the safety of business invitees.

Moreover, requiring a business invitor to implement snow removal during a snowstorm is highly "inexpedient" and "impractical". *See Kraus v. Newton,* 211 Conn. 191, 558 A.2d 240, 243 (1989). Shoveling against a snowstorm is like shoveling sand against the tide. Such a battle is no more easily won by a business owner than a landlord. Thus, the

---

3. However, the Court is unaware of any Michigan case actually holding a business invitor liable for failure to remove snow and ice before the end of a storm.

4. This standard differs from "a reasonable time *after the storm has ceased*". *See Fuller,* 279 A.2d at 441. (emphasis added).

reasonable rule is that an occupier of business premises has until the end of a snow-storm to remove accumulations of snow and ice.

Plaintiff has failed to show that defendant owed her a legal duty to remove snow from the walkway before the snow ceased to fall, and, therefore, as a matter of law, she cannot prevail on this negligence claim.

## V. Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment. The Clerk shall enter judgment for defendant, the United States, forthwith.

It is so ordered.