2001 ME 37

**Terry BUDZKO et al.**

v.

**ONE CITY CENTER ASSOCIATES LIMITED PARTNERSHIP et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 10, 2001.
Decided: Feb. 21, 2001.

Douglas S. Kaplan, Esq., (orally), Kaplan & Grant, Portland, for plaintiff.

Jonathan W. Brogan, Esq., (orally), John R. Veilleux, Esq., Norman Hanson & DeTroy, LLC, Portland, for defendants.

Panel: WATHEN, C.J., and CLIFFORD,* RUDMAN, DANA, and ALEXANDER, JJ.

ALEXANDER, J.

[¶ 1] One City Center Associates Limited Partnership, Burton Fisher, and Dirigo Management Company (collectively OCC) appeal from a judgment entered in the Superior Court (Cumberland County, De-

lahanty, J.), following a jury verdict awarding damages to Terry Budzko on her claim of negligence.[1] OCC contends that it was under no duty to remove accumulating, freezing precipitation from a stair landing located on its premises as the precipitation fell during a winter storm. Because the evidence was sufficient to establish that OCC failed to exercise reasonable care in keeping its premises reasonably safe, we affirm the judgment.

## I. CASE HISTORY

[¶ 2] Terry Budzko sustained an injury on February 27, 1995, when she slipped and fell on an icy stairway landing of a commercial building owned by OCC. UNUM Corporation was a tenant in the OCC building, and Budzko was a UNUM employee. The OCC building space was leased by a variety of business tenants. Approximately 500 to 1000 people entered and exited the building on a daily basis.

[¶ 3] The record indicates that OCC was responsible for treating snow and ice, and that neither the tenants nor the tenants' employees were responsible for snow and ice treatment or removal. Monthly maintenance procedures had been implemented at the building concerning the removal of snow and ice from the premises. The procedures for February required that maintenance personnel "monitor weather reports to be prepared for winter snowfall or ice storms" and "inspect property on a constant basis for ice build-up on walkways and take whatever measures necessary to keep them clear."

[¶ 4] Although the OCC maintenance contractor testified that it was necessary to remove snow and ice as it came down during a storm, several witnesses testified that no one had shoveled any of the snow, and that neither salt nor sand had been spread on the icy, snow-packed surfaces.

---

* Although not available at oral argument, Justice Clifford participated in this opinion. M.R.App. P. 12(a): "A qualified justice may participate in a decision even though not present at oral argument."

1. Budzko was awarded $20,000 on her negligence claim, and her husband, Richard Budzko, was awarded $3,500 on his loss of consortium claim.

The OCC contractor further testified that an order of priority existed for treating snow and ice during a winter storm, and that the Monument Square entrance to the building received first priority.

[¶ 5] Budzko testified that at approximately 5:30 P.M. on February 27, she exited the Monument Square doorway, walked down one set of steps on the side of the building, and then slipped and fell on an icy stairway landing. As a consequence of her fall and resulting injuries, Budzko brought suit alleging negligence against OCC.

[¶ 6] Prior to trial, OCC filed a motion in limine to exclude evidence that other people may have slipped or fallen around the building on the same day, but at different times and different places. The court never ruled on the motion. However, when, during Budzko's opening statement, counsel described an injury sustained by Donna Morey, who slipped and fell on the OCC premises earlier on the same day but in a different location, OCC's counsel objected. At sidebar, the court denied OCC's motion for a mistrial but sustained the objection, concluding that Morey's injury was irrelevant because it occurred in a place different from where Budzko was injured. The court gave a curative instruction, and OCC did not object that the instruction was insufficient to remedy the harm caused by the improper reference. At several points during the trial, both parties questioned witnesses about the circumstances surrounding Morey's injury. No objection was raised to any of these inquiries.

[¶ 7] During summation, Budzko's counsel made reference to certain "missing witnesses" and again referred to Morey's injury. OCC's counsel objected and moved for a mistrial on the grounds that the reference to Morey's injury was irrelevant, and that the reference to missing witnesses was improper. The court denied the motion for a mistrial but provided a curative instruction on the missing witness issue.

[¶ 8] OCC filed a motion for judgment as a matter of law at the close of trial on the basis that it was under no duty to remove freezing precipitation as it fell. The motion was denied, and the jury returned a verdict in favor of Budzko. OCC then filed a renewed motion for judgment as a matter of law and a motion for a new trial, both of which were denied. This appeal followed.

## II. MOTION FOR JUDGMENT AS A MATTER OF LAW

[¶ 9] We review the denial of a motion for judgment as a matter of law "to determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury's verdict." *Larochelle v. Cyr*, 1998 ME 52, ¶ 6, 707 A.2d 799, 801 (citation omitted). *See Saucier v. Allstate Ins. Co.*, 1999 ME 197, ¶ 18, 742 A.2d 482, 488 (stating that a motion for judgment as a matter of law should not be granted if "any reasonable view of the evidence could sustain a verdict for the opposing party pursuant to the substantive law that is an essential element of the claim"). A party seeking judgment as a matter of law after trial "has the burden of establishing that the adverse jury verdict was 'clearly and manifestly wrong.'" *Id.* (quoting *Maine Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 5, 724 A.2d 1248, 1250).

[¶ 10] A defendant is entitled to judgment as a matter of law on a negligence claim if that defendant owes no duty to the plaintiff. *See, e.g., Trusiani v. Cumberland & York Distribs., Inc.*, 538 A.2d 258, 261-63 (Me.1988). A duty is "an obligation, to which the law will give recognition and effect, to conform to a particular manner of conduct toward another." *Quadrino v. Bar Harbor Banking & Trust Co.*, 588 A.2d 303, 304 (Me.1991). Whether one party owes a duty of care to another presents a question of law that we review de novo. *See Decker v. New Eng. Pub. Warehouse, Inc.*, 2000 ME 76, ¶ 7, 749 A.2d 762,

765. Whether a duty was breached and whether a defendant's conduct was reasonable under the circumstances are questions of fact for the jury. *See Lewis v. Knowlton*, 1997 ME 12, ¶ 10, 688 A.2d 912, 914.

[¶ 11] OCC contends that a possessor of land owes no legal duty to business invitees to remove freezing precipitation as it falls during a winter storm. Although we have not addressed this narrow issue directly, we have concluded that in "slip and fall" negligence cases, a business owner owes a "positive duty of exercising reasonable care in providing reasonably safe premises ... when it knows or should have known of a risk to customers on its premises." *Currier v. Toys 'R' Us, Inc.*, 680 A.2d 453, 455–56 (Me.1996) (vacating trial court's grant of defendant's motion for judgment as a matter of law and concluding that a business owner is under a duty to correct a hazardous condition on its premises when the owner has knowledge of the condition).

[¶ 12] Similarly, we have concluded that a business owner has a duty to respond to a foreseeable danger from foreign substances on the floor of its premises if the owner: (1) caused the substance to be on the floor; (2) had actual knowledge of the existence of the foreign substance; (3) was aware of a recurrent condition that posed a potential risk to invitees from foreign substances on the floor; or (4) allowed the foreign substance to remain on the floor for such a length of time that the defendant should have known about it. *See Dumont v. Shaw's Supermarkets, Inc.*, 664 A.2d 846, 848–49 (Me.1995). In *Dumont*,

we held that a business owner "who is aware of the existence of a recurrent condition that poses a potential danger to invitees may not ignore that knowledge and fail reasonably to respond to the foreseeable danger of the likelihood of a recurrence of the condition." *Id.* at 849.

[¶ 13] The reasoning of *Currier* and *Dumont* make it evident that a business owner who anticipates that 500 to 1000 invitees may enter and leave its premises during a snow or ice storm has a duty to reasonably respond to a foreseeable danger posed to the invitees by a continuing snow or ice storm.[2] That duty is not fulfilled by OCC's argument that it could wait until after the storm to take any action, regardless of the risk posed to its invitees during the storm.[3]

[¶ 14] In this case, the jury was instructed that:

[T]he owner of a building or premises has a duty to use reasonable care to maintain those premises in a reasonably safe condition. To recover in a case like this, the plaintiff must prove by a preponderance of the evidence that there was an accumulation of snow and/or ice on the premises that was the proximate cause for her injuries. She must prove by a preponderance of the evidence that the snow and ice condition had been present for a time of sufficient duration prior to her injury to enable a reasonably prudent person to discover and remedy it, and thirdly that the defendant knew of the snow and/or ice condition and did not correct it or did not know of the snow and/or ice condition

---

**2.** The duty to respond may be less rigorous for an entity that does not reasonably anticipate the comings and goings of significant numbers of invitees while a storm is in progress. We do not here address the nature of any duty to remove snow and ice during a storm in any case where access by no invitees, or very few invitees, may be reasonably anticipated during the storm.

**3.** *See, e.g., Munsill v. United States*, 14 F.Supp.2d 214, 220–21 (D.R.I.1998) (noting that the majority of jurisdictions have adopted

the "storm in progress" doctrine, pursuant to which "an occupier of business premises 'is afforded a reasonable time after the cessation of the storm or temperature fluctuations ... to correct the situation'") (quoting *Olejniczak v. E.I. Du Pont De Nemours & Co.*, 998 F.Supp. 274, 280 (W.D.N.Y.1998)). This "storm in progress" rule appears inconsistent with the duty of reasonable care owed by a business owner reasonably anticipating a significant number of invitees during a Maine winter storm.

but in the exercise of reasonable care should have known about it and corrected it under the conditions that you heard about in this case.

The defendant, ladies and gentleman, has a duty to ensure that its business premises were reasonably safe for customers in light of the totality of the existing circumstances. The existing circumstances include the prevailing weather conditions at the time of the incident. *A defendant is not required to remove snow or ice as it falls but is required to take appropriate corrective action to remove ice and snow within a reasonable time after the storm has abated.*

(Emphasis added). The italicized portion of this instruction indicates that OCC may have received more than it was entitled to because the jury was instructed based on our dictum in *Isaacson v. Husson College*, 297 A.2d 98 (Me.1972), which is not the rule in Maine.[4] Even with that instruction, the jury found that OCC failed to exercise reasonable care.

■ [¶ 15] Viewed in the light most favorable to Budzko, the evidence is sufficient to support the jury's finding that OCC failed to exercise reasonable care. Specifically, the evidence and all reasonable inferences drawn therefrom establish that OCC knew of the weather conditions, that OCC had maintenance personnel available to treat the icy condition of the premises, and that OCC knew that 500 to 1000 business invitees would enter and exit

the premises on February 27. Despite such knowledge, the evidence supported the jury's implicit findings that OCC failed to treat the ice with salt or sand, failed to shovel any of the accumulated snow or ice, and failed to warn its business invitees of the icy condition of the premises.

[¶ 16] Because a reasonable view of the evidence supports the jury's verdict, we conclude that OCC has failed to establish that the verdict was "clearly and manifestly wrong." *Saucier v. Allstate Ins. Co.*, 1999 ME 197, ¶ 18, 742 A.2d 482, 488. Business owners have a duty to reasonably respond to foreseeable dangers and keep premises reasonably safe when significant numbers of invitees may be anticipated to enter or leave the premises during a winter storm.

## III. OCC'S EVIDENTIARY CHALLENGES

■ [¶ 17] OCC also contends that the trial court exceeded the bounds of its discretion in denying OCC's motions for a mistrial and a new trial on the ground that Budzko improperly referred to missing witnesses and improperly elicited evidence of other accidents. We review a trial court's refusal to grant a motion for a mistrial for an abuse of discretion, *see Walter v. Wal–Mart Stores, Inc.*, 2000 ME 63, ¶ 33, 748 A.2d 961, 973, and a refusal to grant a motion for a new trial for a "clear and manifest abuse of discretion." *Id.* ¶ 34, 748 A.2d at 973 (quoting *Gilmore v.*

---

4. In *Isaacson*, a student (*i.e.* a business invitee) slipped and fell on a dimly lit, icy walkway on the Husson College campus. *See id.* at 102. A winter storm had dumped approximately 42 inches of snow on the campus from Monday, February 24 until Wednesday, February 26; plaintiff sustained his injuries on Thursday evening, February 27. *See id.* at 101–02. On appeal, we vacated the trial court's grant of Husson's motion for directed verdict and held that the college, as possessor of the land, "owed the student plaintiff whose status was that of a business invitee the positive duty of exercising reasonable care to provide him with walkways which he was invited

to use, or which he would be reasonably expected to use, which were reasonably safe for his use." *Id.* at 103. The Court then went on to note, in dictum, that:

> We need not determine in the instant case what steps reasonable care would have required the corporate defendant to take while the storm was in progress. This was not the freezing rain or sleetstorm during which, under the general rule, the invitor is not required to remove the freezing precipitation as it falls, but is only duty bound to take appropriate corrective action within a reasonable time after the storm has abated.

*Id.* at 103–04.

*Cent. Maine Power Co.,* 665 A.2d 666, 670 (Me.1995)).

[¶ 18] If Budzko's counsel's improper remarks did not influence the jury, or if the prejudicial effect of the remarks was dissipated by a subsequent curative instruction, the trial court's denial of a motion for a new trial will not be disturbed. *See Gilmore,* 665 A.2d at 668. Deferring to the trial court's broad discretion in such circumstances is appropriate because the trial court "who heard the remarks in the context of the entire trial is in the best position to gauge the reaction of the jury to them." *Id.* at 669. Because the trial court immediately provided curative instructions for the improper references to missing witnesses, *see State v. Brewer,* 505 A.2d 774 (Me.1985), and other accidents, *see Moody v. Haymarket Assocs.,* 1999 ME 17, ¶ 4, 723 A.2d 874, 875, we conclude that the curative instructions adequately addressed any potential prejudice resulting from the improper references, and, therefore, that the trial court did not exceed the bounds of its discretion in denying the motions.

The entry is:

Judgment affirmed.