Turmel v. UVM, No. S0980-01 Cncv (Katz, J., Apr. 20, 2004)


[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


STATE OF VERMONT
Chittenden County, ss.:


TURMEL

v.

UNIVERSITY OF VERMONT


ENTRY


This motion presents us with the question of whether the "Storm in Progress" Rule applies to premises liability cases in Vermont.  On December 14, 2000, plaintiff Turmel walked on to defendant college's campus to pick up his paycheck.  (Turmel Dep. at 4, 10.)  He noticed that the snowstorm, which had begun earlier in the day, had made the ground slushy and wet.  (Id. at 21.)  The snowstorm continued and worsened

throughout the day.  (Id. at 13, 14, 22; Aff. of David Turmel, Mar. 26, 2004, at ¶ 7.)  After picking up his paycheck, plaintiff left the building and used the same crosswalk to leave campus and catch his bus.  Id.  By this time, the snow had accumulated further and the temperature was dropping.  (Id. at 22.)  As plaintiff reached the end of the crosswalk, he stepped off, slipped, and fell. (Id. at 9, 22.)  Thereafter, plaintiff brought suit against the college for injuries sustained from the fall.

Plaintiff's claims require the determination of the proper duty of care that the University owed him to keep its premises free of snow and ice.  In Vermont, an owner has a duty to use reasonable diligence to maintain its property in a reasonably safe and suitable condition.  Wakefield v. Tygate Motel Corp., 161 Vt. 395, 397–98 (1994); McComack v. State, 150 Vt. 443, 445 (1988).  As at least one commentator has noted, this standard is part of a fairly consistent analysis for premise liability in every state:

> Each jurisdiction uses essentially the same principles: (1) duty is fashioned on the status of the plaintiff;  (2) reasonable or ordinary care is expected in keeping premises reasonably safe; (3) business owners are not insurers of safety; and (4) foreseeability, both in terms of the invitor and invitee's ability to foresee, is a factor when determining duty.

J. Williams, Note, Budzkov v. One City Center Associates Limited Partnership: Maine's Unique Approach to Business Owners' Duty to Remove Ice and Snow, 55 Me. L. Rev. 517, 519–20 (2003).  As a fact dependant issue, the standard is, in most circumstances for the jury to decide based on the particular circumstances.  See Smith v. Monmaney & Speno, 127 Vt. 585, 589 (1969); Olejniczak v. E.I. DuPont de Nemours & Co., 998 F. Supp. 274, 278 (W.D.N.Y. 1998).  Factors that tend to complicate the duty of care and make it such a factual issue include where

the accident occurred, how long the snow or ice had been on the ground, the amount of foot traffic through the area, and the relationship between the parties. See generally G. Sarno, <u>Liability for Injuries in Connection with Ice or Snow on Nonresidential Premises</u>, 95 A.L.R.3d 15 (1979) (dividing its analysis along time, place, and status lines). Thus different duties may arise when the accident occurs inside or outside, on steps or on walkways (covered and uncovered), and to invitees rather than trespassers. <u>Id</u>. But above all, the time between when snow or ice forms and when the accident occurs play a critical role in determining an owner's duty.

Under this standard of reasonable care, time affects duty because an owner is only responsible for a hazard of which it is or should be aware. To the extent that the defendant is a college in Vermont, it must expect that snow will grace its commons throughout the year. Snow is simply a fact of life in Vermont. <u>Smith</u> 127 Vt. at 589. But, the fact that snow is an expected part life in Vermont is a double-edged sword to plaintiff's case. To say that the college should have been aware of and dealt with the effects and dangers of the day's snow accumulation, because it was foreseeable, is also to acknowledge that a certain amount of snow and accompanying danger is to be expected by those walking in around Burlington in winter. See <u>McCormack</u>, 150 Vt. at 445–46 (affirming defendant's lack of liability because conditions, while dangerous, were not constructively known to the state and did not rise to an acute hazard requiring extraordinary response). Thus, reasonableness is dependant not on making the premises absolutely safe or snow free but on the amount of time for notice and the degree of a storm.

Time is further complicated when a snowstorm extends over the period involving the accident. As Vermonters are aware, shoveling out too

early can waste resources and produce no appreciable difference. No court in Vermont would expect a landlord to shovel her driveway six times a day just because it kept snowing. Contrapositively, we can say that after the storm, an owner does have a responsibility to dig out within a reasonable time. See, e.g., Whitt v. St. John's Episcopal Hosp., 685 N.Y.S.2d 789 (2d Dep't 1999). The question then is how long does an owner have before it must begin to clear its property once a storm has begun. Other states addressing this issue have developed two concepts. The first, known as the "Natural Accumulation Rule," is only followed by two states. Athas v. United States, 904 F.2d 79, 81 (1st Cir. 1990) (citing Massachusetts law); Dailey v. Mayo Family Ltd. P'ship, 684 N.E.2d 746, 748 (Ohio Ct. App. 1996). It is an older, harsher rule and states that an owner cannot be held liable for accidents stemming solely from the natural accumulation of ice and snow. There must be another causal event—such as a defective gutter creating an artificial ice patch—before liability as a matter of law can exist. This Rule has been explicitly rejected by two jurisdictions. Pessagno v. Euclid Inv. Co., 112 F.2d 577, 579 (D.C. Cir. 1940); Quinlivan v. Great Atl. & Pac. Tea Co., 235 N.W.2d 732, 740 (Mich. 1975).

The second doctrine for dealing with the issue of liability for snow removal during and immediately after a snowfall is the "Storm in Progress Rule." This Rule says that an owner may wait until a reasonable time after a storm to exercise due care by removing the snow and ice. Olejniczak, 998 F. Supp. at 280; Munsil v. United States, 14 F. Supp. 2d 214, 220–21 (D.R.I. 1998). Thus, it is a matter of law that an accident occurring in the middle of a storm does not impute liability. Notwithstanding any flexibility in application inherent with any tort doctrine, a majority of jurisdictions[1]

---

[1] By majority, we mean a majority of jurisdiction that have considered the

have enunciated and adopted a relatively uniform version of the Rule. Olejniczak, 998 F. Supp. at 280 (New York); Phillips v. SuperAmerica Group, Inc., 852 F. Supp. 504, 506 (N.D. W. Va. 1994); Kraus v. Newton, 558 A.2d 240, 243 (Conn. 1989); Reuter v. Iowa Trust & Sav. Bank, 57 N.W.2d 225, 227 (Iowa 1953); Mattson v. St. Luke's Hosp. of St. Paul, 89 N.W.2d 743, 745 (Minn. 1958);  Carter v Davis, 394 P2d 594 (N.M. 1964); Goodman v. Corn Exch. Nat'l Bank & Trust Co., 200 A. 642, 643 (Pa. 1938); Munsil, 14 F. Supp. 2d at 220–21 (Rhode Island); Walker v. Mem'l Hosp., 45 S.E.2d 898, 902 (Va. 1948); see also  Sinert v. Olympia & York Dev. Co., 664 A.2d 791, 793 (Conn. App. Ct. 1995) (adding a caveat to the rule for "unusual circumstances").  These decisions share two underlying purposes.  The first purpose "is that requiring business owners to clear ice and snow before a storm has ceased would improperly make them insurers of their invitees' safety."  Williams, at 522.  The second purpose "is that requiring a business owner to remove snow or ice before a storm has ended would hold him or her to a standard of care that is not reasonable or ordinary."  Id.  In other words, the Storm in Progress Rule is a legal mechanism to counterbalance an owner's duty standing duty of reasonable care when weather events would otherwise distort it into a "costly and extraordinary" burden.  McCormack, 150 Vt. at 446.

The only jurisdiction that has explicitly rejected the Storm in Progress Rule is Maine.  Budzko v. One City Center Assoc. Ltd. P'ship, 767 A.2d 310, 315 (Me. 2001).  But, upon closer examination, the reasoning in Budzko proves to be limited to its factual trappings.  In Budzko, defendant, the owner of a large downtown building, leased commercial spaces to several companies.  The accident involved an

issue.  Strangely, Hawa'ii, Arizona, and Florida, among others, have remained silent on this particular problem.

employee of one of the lessees falling down the front stairs of the building during a mid-day snowstorm. At the trial two critical facts came to light that became essential to the Maine Supreme Court's reasoning. Id. at 312. First, defendant knew that the building had a high volume of foot traffic—up to 1000 visitors on the staircase— entering and exiting during the work day. Second, defendant knew that the stairs at the main entrance became slippery and dangerous as soon as snow or ice fell on them. Id. at 315. Based on these two facts, the Maine Supreme Court refused to reverse the finding of negligence by the jury by adopting the Storm in Progress Rule. Id. The Court did, however, attempt to limit its holding to the immediate facts:

> The duty to respond may be less rigorous for an entity that does not reasonably anticipate the comings and goings of significant numbers of invitees while a storm is in progress. We do not here address the nature of any duty to remove snow and ice during a storm in any case where access by no invitees, or very few invitees, may be reasonably anticipated during the storm.

Id. at 314 n.2. The result is not too different in substance from the Storm in Progress Rule. Owners in Maine are still not insurers of their invitees, and they are still held to a reasonable care standard, which means owners need not take extraordinary measures to remove all snow and ice the second it touches ground. Cf. Mattson, 89 N.W.2d at 746–47; Phillips, 852 F. Supp. at 506. The real differences in Maine's refusal to adopt the Storm in Progress Rule is the guarantee that slip and fall cases will almost always be decided by juries and that owners are left with a nebulous, perpetual potential for liability without any judicial guidance about the limit of their duty of care during storms. Williams, at 540–41. Moreover, Maine owners

must speculate whether the holding in <u>Budzko</u> even applies to them.  <u>Id</u>.; <u>Budzko</u>, 767 A.2d at 314 n.2.

        For the case at hand, we can immediately distinguish it from the twin salient points of <u>Budzko</u>.  Instead of the front steps of a busy office building, plaintiff's accident occurred on a walkway at the edge of  a large campus.  While it is uncertain how many, if any, accidents have occurred on these walkways, plaintiff has not propounded evidence to support an inference that they were known to be particularly dangerous during snowstorms.  The difference is critical.  If <u>Budzko</u> is to be understood within the context of snowstorm liability cases, it illustrates an alternative theory to time-based liability.  Instead of granting owners a window of time to wait for snow or ice to finish accumulating, <u>Budzko</u> holds that certain areas of high traffic and high danger must be cared for when the owner is aware that traffic and danger are simultaneously present, regardless of the weather.  <u>Budzko</u>, 767 A.2d at 312–13.  This in fact may be read as merely an exception to the Storm in Progress Rule for unusual circumstances or extraordinary conditions.  See <u>McCormack</u>, 150 Vt. at 446 (suggesting that the State might have had an elevated duty if there had been abnormal accumulations); but see <u>Sinert</u>, 664 A.2d at 793 (refusing to extend Connecticut's "unusual circumstances" exception to similar facts).

        We cannot say at this time that such events might carve some niche in the law for such circumstances, and the situation at hand requires no such determination.  Whether we apply the Storm in Progress Rule or look to the duty of care is of little consequence.  The outcome is the same as a matter of law.  College was not an insurer of plaintiff's safety, and it did not have an extraordinary duty to plow its walkways the minute a storm started and continually thereafter. Plaintiff fell in the middle of a snowstorm.

Regardless of what actions the college did or did not take after his fall, it did not have to plow its campus walkways when the storm was beginning to increase.  Even in a world that includes <u>Budzko</u>, we are prepared to distinguish uncovered walkways of a college campus, at the end of a Thursday afternoon, from the main entrance to a busy downtown building, at mid-day.  <u>Niemann v Northwestern College</u>, 389 N.W.2d 260, 261–62 (Minn. App. 1986).  Like any Vermont property owner, the college only had a duty of reasonable care.  Plaintiff makes no showing that college ignored such a duty to him.  Instead, he shows that he took the wrong step at the wrong time.  Such things happen in Vermont in winter.  Furthermore, we conclude that the Storm in Progress Rule, which has been implied in previous Vermont cases, applies.  See <u>McCormack</u>, 150 Vt. at 446 (holding that State's normal plowing procedures satisfied its duty and did not include insuring against snow "sloughing off" into the road); <u>Wakefield</u>, 161 Vt. at 398 (refusing to create an affirmative duty for snow removal).

The final issue raised by plaintiff is whether his fall was caused by the new snow accumulations or by prior accumulations that were never removed.  This suggests that the college was not necessarily negligent on the day of the accident but failed to properly remove snow and ice prior to the day's immediate accumulation.  Plaintiff presents no evidence to support this assertion other than evidence that it may have been the site of other slips and was an important site to clear for exiting ambulances that passed by.  To carry a claim of negligent snow removal, however, plaintiff needs more evidence than a mere assertion.  <u>Samplid Enterp., Inc. v. First Vt. Bank</u>, 165 Vt. 22, 25 (1996).  Without more, we will not presume negligence or allow a jury to speculate.  <u>Poplaski v. Lamphere</u>, 152 Vt. 251, 254–55 (1989).

Based on the foregoing, defendant's motion for summary judgment is granted and plaintiff's claims are dismissed.

Dated at Burlington, Vermont_____, 2004.


_____
Judge