STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         DOCKET NO. CV-09-520
                                        JAW - CUM- 4/1/2010

MARCELA BENNETT,
Personal Representative of the
ESTATE OF WAINO RAY,

       Plaintiff
                                                ORDER
v.

L.P. MURRAY & SONS, INC.;
MAINE LIFE CARE RETIREMENT
COMMUNITY d/b/a/ PIPER SHORES,
and LIFE CARE SERVICES LLC.

       Defendants.

## DECISION AND ORDER

This matter comes before the court on a motion to dismiss by Defendant L.P.

Murray & Sons, Inc. in accordance with M. R. Civ. P. 12(b)(6).

### FACTUAL BACKGROUND

This lawsuit, brought by the personal representative of decedent Waino Ray

("Plaintiff"), arises from a slip and fall that occurred on February 2, 2008 at a retirement

community located in Scarborough, Maine. The retirement community is owned by

Defendant Maine Life Care Retirement Community d/b/a/ Piper Shores and managed by

Defendant Life Care Services, LLC (collectively referred to as "Piper Shores"). At all

material times Ray was a resident at Piper Shores. Defendant L.P. Murray & Sons, Inc.

("Murray") is a business engaged in sanding and snow removal. Murray contracted with

Piper Shores to provide the retirement community's sanding and snow removal.

The facts and allegations in the complaint state the following:

On the evening of February 1, 2008, Murray sanded Piper Shores walkways, but did not sand again on the morning of February 2, 2008, despite being aware that freezing rain and snow would make the area icy and slippery for the residents of Piper Shores. At approximately 9:00 am Ray fell on an unsanded icy walkway outside the entrance to the main building and struck his head. Ray was aided by friends and employees of Piper Shores, but refused transport to the hospital. After resting in the main reception Ray returned to his apartment and was subsequently witnessed to have an altered mental state. Emergency services were then requested to transport him to the hospital. At the hospital Ray was unresponsive and diagnosed with a subdural hematoma with midline shift that was fatal without surgical options. Ray died on February 4, 2008 from his head injury.

Plaintiff has sued the Defendants for negligence and wrongful death. Plaintiff alleges that by failing to properly sand Piper Shores Defendant Murray breached its duty to protect the residents from falling on ice or snow and to maintain the premises in a safe and reasonable condition, thus causing Ray's injuries. Plaintiff also alleges that Defendant Piper Shores was negligent as it failed to ensure that the walkways were properly sanded prior to the time they would be used by the elderly residents of Piper Shores. The Plaintiff has also brought a wrongful death claim based on the Defendants alleged negligence.

Murray does not dispute that Plaintiff is entitled to bring a claim for negligence against Piper Shores. However, Murray argues that since it contracted its services to Piper Shores only, it did not owe a duty of care to the Plaintiff. Therefore, Murray contends, the Plaintiff has no basis for a negligence claim as to Murray.

## PROCEDURAL HISTORY

On or about September 21, 2009, the Plaintiff filed a complaint for negligence and wrongful death. After being served, Defendant Piper Shores filed an answer on October 28, 2009, and Defendant Murray filed an answer on November 3, 2009. On or about November 30, 2009, Murray filed a motion to dismiss with an incorporated memorandum of law. On December 2, 2009, the Plaintiff filed an opposition to the motion to dismiss. On December 9, 2009, Murray filed a reply to Plaintiff's opposition.[1]

## DISCUSSION

### I.     Standard of Review.

"A motion to dismiss "tests the legal sufficiency of the complaint." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, 85. In determining whether a motion to dismiss should be granted, the court considers "the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint." *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, 832. The facts alleged are treated as admitted and are viewed "in the light most favorable to the plaintiff." *Id.* The court should dismiss a claim only "when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he [or she] might prove in support of his [or her] claim." *Id.* (quoting *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1246).

---

[1] Although not pertinent to the pending motion before the court, subsequent to the motion to dismiss filings, Defendant Piper Shores filed a cross claim against Defendant Murray for contribution, indemnity, and negligence. Defendant Murray answered the cross-claims on January 19, 2010.

## II. Negligence

Murray has moved to dismiss, arguing that the Plaintiff has failed to plead facts that could establish that Murray owed a duty to the Plaintiff, thus the negligence claim cannot stand.

To sustain a claim for negligence "a plaintiff must establish a prima facie case showing duty, breach, causation, and damages." *Alexander v. Mitchell*, 2007 ME 108, ¶ 14, 930 A.2d 1016, 1020; *see also Dunham v. HTH Corp.*, 2005 ME 53, ¶ 8, 870 A.2d 577, 579. A party has a duty of care when he or she "is under an obligation for the benefit of a particular plaintiff." *Quadrino v. Bar Harbor Banking & Trust Co.*, 588 A.2d 303, 304 (Me. 1991). Whether a duty of care exists is a legal question. *Pelletier v. Fort Kent Golf Club*, 662 A.2d 220, 222 (Me. 1995). "A defendant is entitled to judgment as a matter of law on a negligence claim if that defendant owes no duty to the plaintiff." *Budzko v. One City Ctr. Assocs. Ltd. Partn.*, 2001 ME 37, ¶ 10, 767 A.2d 310, 313.

The court must now determine whether the Plaintiff has adequately plead facts that Murray owed a duty of care to Ray and the other residents of Piper Shores. *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, 832 (noting that when ruling on a motion to dismiss a court must determine whether "*any cause of action* [] may reasonably be inferred from the complaint") (emphasis added). Murray did not owe Ray a duty as a possessor of land. *See Alexander v. Mitchell*, 2007 ME 108, ¶ 25, 930 A. 2d 1016, 1023 (citing *Denman*, 1998 ME 12, ¶¶ 5, 7, 704 A.2d at 413-14). It is not disputed that Murray did not own the walkway in question. Murray's only relation to the property was through the contract with Piper Shores to provide its snow removal and sanding. Murray did not occupy or manifest an intent to control the property simply by agreeing to these contract

4

services. *See id.*[2] Therefore, the court finds, as a matter of law, that Murray did not owe a duty to Ray under a premises liability theory.

However, despite being unable to sustain a negligence claim on the basis of premises liability, the court concludes that, when viewing the facts in a light most favorable to the Plaintiff as required at this stage in the proceedings, the Plaintiff has adequately plead a claim that Ray was an intended beneficiary of the contract between Piper Shores and Murray.

The Law Court has stated that for a plaintiff to prevail on an intended beneficiary theory he or she must show that the property owner intended that he or she receive an enforceable benefit under the contract. *Denman v. Peoples Heritage Bank, Inc.,* 1998 ME 12, ¶ 9, 704 A.2d 411, 414-15. "It is not enough that [the plaintiff] benefited or could have benefited from the performance of the contract. The intent must be clear and definite, whether it is expressed in the contract itself or in the circumstances surrounding its execution." *Id.* (internal citations and quotations omitted).

At this stage in the proceedings, notably without having the benefit of the contract between Piper Shores and Murray to examine in accordance with M.R. Civ. P. 12(b)(6),[3] the court cannot say as a matter of law that the Plaintiff as a resident of the retirement community was not an intended beneficiary of the contract between Piper Shores and

---

[2] For example, in *Alexander*, the Law Court cited to *Denman* in its holding that the defendant plowing contractor did not owe a duty to the plaintiff simply because he was under a contract to clear the road, nor was there "a duty based on a failure to affirmatively act because [the plowing contractor] did not create the dangerous situation . . .; rather the danger was created by the natural accumulation of ice and snow." *Alexander,* 2007 ME 108, n.13, 930 A. 2d at 1024 (citing *Denman,* 1998 ME 12, ¶¶ 5, 7, 704 A.2d at 413-14).

[3] M.R. Civ. P. 12(b) states that if, on a motion to dismiss, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

5

Murray. When viewing the allegations in the complaint[4] the court concludes that the Plaintiff has adequately plead a negligence cause of action based on an intended beneficiary theory. *See Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, 832. More evidence is needed to determine whether the contract between the defendants, or circumstances surrounding its execution, indicate a clear intention to create in the Plaintiff enforceable rights.

The court need not address Murray's motion to dismiss in relation to the wrongful death claim as that claim is contingent upon a finding of negligence. *See* 18-A M.R.S.A. § 2-804.

## CONCLUSION

As the standard for a motion to dismiss mandates that all facts must be viewed in a light most favorable to the Plaintiff, the court concludes that the Plaintiff has adequately plead a negligence cause of action as to Defendant Murray. As such, Murray's motion to dismiss is DENIED.

---

[4] The court is able to infer a negligence cause of action from the complaint based on the following statements:
- ¶ 6: Piper Shores "had a contract with Defendant L.P. Murray to provide services including sanding and salting the walkways around the buildings of the Piper Shores facility used by the elderly residents to prevent the walkways from becoming slippery from ice and snow."
- ¶ 11: "In accordance with its contract for sanding and salting, Defendant L.P. Murray provided sanding services during the evening hours of February 1, 2008, but did not sand again during the morning hours of February 2, 2008 including up to 9:00 am, despite being aware that rain would make the icy walkways more slippery and that residents of Piper Shores would be using the walkways to: get from building to building; walk their dog or for recreational purposes."
- ¶ 20: "Defendant L.P. Murray had a duty to properly sand the premises of Piper Shores to protect the residents from falling on ice or snow and Defendants Piper Shores and Life Care Services had a duty to maintain the premises in a safe and reasonable manner for the use of the residents of Piper Shores."

(*See also* Complaint ¶¶ 23-25.)

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: April 1, 2010

Joyce A. Wheeler, Justice

< OF COURTS
berland County
O. Box 287
Maine 04112-0287

WENDELL LARGE ESQ
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME 04112-9545

aine 04112-0287

NELSON LARKINS ESQ
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
PO BOX 9546
PORTLAND ME 04112-9546

erland County
O. Box 287
Maine 04112-0287

MARK RANDALL ESQ
PO BOX 17915
PORTLAND ME 04112

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-09-520
JAW-CuM- 12/1/2011

MARCELA BENNETT,
Personal Representative of the
ESTATE OF WAINO RAY,

Plaintiff,

v.

LP MURRAY & SONS, INC., ET AL.,

Defendants

STATE OF MAINE
Cumberland, ss, Clerk's Office

DEC 01 2011

RECEIVED

**DECISION and ORDER**

Before the court is Defendants', Maine Care Retirement Community, d/b/a Piper Shores, and Life Care Services, LLC, Motion for Summary Judgment on Counts I (negligence) and II (wrongful death) of the Plaintiff's Complaint.

## BACKGROUND

This lawsuit, brought by the personal representative of decedent Waino Ray ("Plaintiff"), arises from a slip and fall that occurred on February 2, 2008 at a retirement community located in Scarborough, Maine. The retirement community is owned by Defendant Maine Life Care Retirement Community d/b/a/ Piper Shores and managed by Defendant Life Care Services, LLC (collectively referred to as "Defendants" or "Piper Shores"). At all material times Ray was a resident at Piper Shores. (Defs.' Stat. Facts ¶ 3.)

Piper Shores contracted with L.P. Murray & Sons, Inc. for plowing snow from the building, fire lanes, parking areas and sidewalks, spreading salt/sand and salt as required on the premises, snow blowing and shoveling walkways. (Defs.' Stat. Facts ¶ 5.) Under this contract, L.P. Murray would treat Piper Shores

1

if there was a storm, if they were called by Piper Shores' security, or if called by Cape Elizabeth Public Works. (Defs.' Stat. Facts ¶ 9.)

Piper Shores' maintenance and security staff were also responsible for snow and ice removal. (Defs.' Stat. Facts ¶ 12.) The inspection procedure for when either maintenance staff or security staff on the overnight or weekend shifts came on duty was to ensure that the emergency exists, entrances, and exits were clear. (Defs.' Stat. Facts ¶ 16.) This inspection was to occur from the exterior. (Defs.' Stat. Facts ¶ 17.) After this was complete the individual would do an interior inspection and a vehicle inspection. (Defs.' Stat. Facts ¶ 18.) If there is an emergency when the security guard begins his or her shift, the individual may forego the inspection until the emergency has been dealt with. (Defs.' Stat. Facts ¶ 20.)

On the evening of February 1, 2008, L.P. Murray went to Piper Shores and spread a salt/sand mixture on most areas, including around the front entrance. (Defs.' Stat. Facts ¶ 22.) On February 2, 2008, security guard Richard Preston arrived for his shift at 7:45 AM. (Defs.' Stat. Facts ¶ 25.) He first responded to an emergency. (Defs.' Stat. Facts ¶ 28.) He then did interior rounds and checked the entrances and exits. (Defs.' Stat. Facts ¶ 29.) He then conducted a vehicle patrol of the premises. (Defs.' Stat. Facts ¶ 31.) At 8:55 AM he received a call on the radio of an emergency at the front entrance. (Defs.' Stat. Facts ¶ 31.)

Upon arriving, the security guard was informed that Mr. Ray had fallen on the ice in front of the building. (Defs.' Stat. Facts ¶ 34.) After the emergency was under control, the security guard went outside to observe the area where Mr. Ray fell. (Defs.' Stat. Facts ¶ 38.) He discovered ice on both sides of the front entrance that was difficult to see but visible from certain angles. (Defs.' Stat.

2

Facts ¶ 42.) He then salted the area and put up yellow caution signs. (Defs.' Stat. Facts ¶¶ 45-46.) Later that day, the security guard and other staff responded to an emergency in Mr. Ray's apartment. (Defs.' Stat. Facts ¶ 49.) Emergency response was contacted and Mr. Ray was brought to the hospital where he later passed away. (Defs.' Stat. Facts ¶¶ 50-51.)

The Plaintiff alleges that Defendant Piper Shores was negligent by failing to ensure that the walkways were properly sanded prior to the time they would be used by the elderly residents of Piper Shores. The Plaintiff has also brought a wrongful death claim based on the Defendants alleged negligence.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178).

This action in negligence and wrongful death is based on the alleged negligence of Piper Shores for failure to exercise reasonable care in preventing the iced condition of the brick walkway on which Mr. Ray slipped and fell, causing his death. "To survive a defendant's motion for a summary judgment in a negligence action, a plaintiff 'must establish a prima facie case for each of the four elements of negligence: duty, breach, causation, and damages.'" *Davis v. R C & Sons Paving, Inc.*, 2011 ME 88, ¶10, 26 A.3d 787 (quoting *Quirion v. Geroux*, 2008 ME 41, ¶ 9, 942 A.2d 670). The Defendants appear to challenge both the scope of

3

duty it owed and whether or not there was a breach of that duty. The existence of a duty of care is a question of law. *Laurence v. Howard Sports-Topsham*, 2009 Me. Super. LEXIS 129, *10 (May 5, 2009). "Whether a duty was breached and whether a defendant's conduct was reasonable under the circumstances are questions of fact for the jury." *Budzko v. One City Center Assoc. LP*, 2001 ME 37, ¶ 10, 767 A.2d 210 (2001).

"A business owner owes a 'positive duty of exercising reasonable care in providing reasonably safe premises…when it knows or should have known of a risk to customers on the premises.'" *Budzko*, 2001 ME 37, ¶ 11, 767 A.2d 210 (citing *Currier v. Toys'R'Us, Inc.*, 680 A.2d 453, 455-56 (Me. 1996)). Maine courts have on many occasions taken the opportunity to define, limit and restrict the common law duty of care in negligence actions related to winter weather. *Alexander v. Mitchell*, 2007 ME 108, ¶ 19, 930 A.2d 1016 (2007). "[The courts] have held that an owner or occupier of land has no duty to remove natural accumulations of ice and snow with reference to persons passing by the premises, or in landlord-tenant relationship." *Isaacson v. Husson College*, 297 A.2d 98, 103 (Me. 1972) (internal citations removed). However, the Law Court declined to extend this reasoning to the business-invitee and possessor-of-land situation. "[T]he mere fact that snow and ice conditions are prevalent during the course of our severe Maine winters is not in and of itself sufficient rationale for the insulation of the possessor of land from liability to his business invitees." *Id.* Where a landowner has a duty to protect against hazardous conditions, it does not make sense to remove that duty simply because the hazardous condition is created by snow and/or ice. *Alexander*, 2007 ME 108, ¶ 24, 930 A.2d 1016.

4

The Defendants cite section 7-64 of the Maine Jury Instruction Manual as stating the elements that a plaintiff must establish to prove a negligence claim when snow and/or ice is involved. Those instructions state that an ordinary duty of care is required and that the plaintiff must prove (1) that there was an accumulation of snow/ice that was the proximate cause of the injury, (2) that the snow/ice was present for a time of sufficient duration prior to plaintiff's injury to enable a reasonably prudent person to discover and remedy, or warn of, it, and (3) that the defendant knew of the condition, or in the exercise of reasonable care should have known of the condition, and did not correct it or warn of it. Alexander, *Maine Jury Instruction Manual* § 7-64 (4th ed. 2011).

The case law makes clear that a landowner continues to owe a duty of care to business invitees even when a hazardous condition is created by a natural accumulation of snow and/or ice. The remaining question is whether there was a breach of that duty. The Defendants argue that the Plaintiff has not elicited enough evidence during discovery to prove that the ice on which Mr. Ray slipped and fell was present for a sufficient time to enable the Defendants to discover it or to prove that, had the security guard completed his inspections differently, he would have discovered the ice before Mr. Ray fell. The question of breach is typically a question of fact for the jury.

It is undisputed that the area where Mr. Ray fell was at least partially covered with ice at the time of his fall. (Defs. Stat. Facts ¶¶ 39, 40, 42, 43.) At oral argument, the Defendants claimed that it is purely speculation to state that had the security officer examined the entrances and exits from the exterior that he would have discovered the ice before Mr. Ray fell. However, the security officer testified that the ice would have been discovered had he done an exterior check.

5

(Pl. Stat. Facts ¶ 41.) The Plaintiff also put forth evidence that the "first thing" to be done was an exterior check unless there was an emergency but that after the emergency was cleared, the exterior inspection should be completed. (Pl. Stat. Facts ¶ 25.)

It is also undisputed that Piper Shores was aware that this area "could have patchy accumulation which was usually broken up with the application of salt." (Defs.' Stat. Facts ¶ 41; Pl Stat. Facts ¶35; Defs.' Reply Stat. Facts ¶ 35.) However, the extent to which the Defendants "should have known" that this area was often covered with ice is disputed. (Pl. Stat. Facts ¶ 34; Defs.' Reply Stat. Facts ¶ 34.) The Plaintiff cites to testimony of Mr. Stilphen to state that the area in question was subject to recurrent ice formation from run-off from melting snow and from the roof area that lacked gutters. (Pl. Stat. Facts ¶ 34.) Furthermore, the testimony of Mr. Murray, stating that he was instructed not to use sand in this area even after he explained why sand was necessary, may be evidence of breach. (Pl. Stat. Facts ¶ 36.)

It is also disputed whether the weather conditions on February 2, 2008 were such that the Piper Shores should have known that the recurrent condition would potentially exist. (Pl. Stat. Facts ¶ 49; Defs.' Reply Stat. Facts ¶ 49.) At oral argument, the Defendants stated that the inspections completed throughout the day reveal no other ice on the grounds of the facility. This evidence could support a jury's finding that because ice formed in this area when no other areas had ice, the Defendants should have inspected it more frequently or in the first instance.

These are genuine issues of material fact that must be determined by a fact

6

finder. Also, the court finds that there is sufficient evidence on which a jury could make a finding of breach. Therefore, resolution of the case on summary judgment inappropriate.

**The entry is:**

The Defendants' Motion for Summary Judgment on Counts I and II of the Plaintiff's Complaint is denied.

DATE: December 1, 2011

Joyce A. Wheeler
Justice, Superior Court

Mark Randall Esq-obo Plaintiff

Erin Berry Esq-obo Defendants Maine Life Care
and Life Care Services

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-09-520

MARCELA BENNETT,
Personal Representative of the
ESTATE OF WAINO RAY,

Plaintiff,

v.

POST-TRIAL ORDER

LP MURRAY & SONS, INC., ET AL.,

Defendants

Before the court is the Marcella Bennett's Motion for a New Trial on the grounds that no credible evidence supports the jury's verdict and the substantial justice has not been done. In 2009, Ms. Bennett filed a complaint against Piper Shores asserting negligence and wrongful death on behalf of her father's estate. The court conducted a jury trial in June 2012. The verdict form required the jury to first determine the question, "Were the Defendants Life Care Community, Inc., d/b/a Piper Shores and Life Care Services, LLC negligent and, if so, was their negligence a legal cause of Waino Ray's death?" The jury responded in the negative, and returned a verdict in favor of the defendants.

Without a transcript and relying on the deposition testimony used in the examination and cross-examination of witnesses, plaintiff argues that the evidence is uncontroverted on the issues of the duty to Waino Ray and breach of that duty. Plaintiff contends that the uncontroverted testimony includes admissions that (1) defendants have a duty to check walkways for ice each morning, (2) on February 2, 2008, the defendants did not check the walkways including the brick walkway next to the main entrance, (3) the defendants

1

allowed the ice to remain in the walkway, and (4) these actions of defendant resulted in Mr. Ray falling on the ice and suffering a fatal head injury.

The Defendants, Maine Care Retirement Community, d/b/a Piper Shores, and Life Care Services, LLC, (Piper Shores), counter that (1) the plaintiff has failed to demonstrate any basis for claiming that the verdict was clearly and manifestly wrong, and (2) there is credible evidence that supports the jury's verdict and it would be inappropriate to take away the jury's duty and right to decide the case.

## DISCUSSION

Ms. Bennett's argues that the evidence did not support the jury's verdict, and that unless the jury acted with bias, prejudice, or improper influence, or has made some mistake of fact or law, it could not have rationally returned a verdict for the defendants because the evidence on negligence adduced by the plaintiff was uncontroverted.

In order to reach its verdict, the jury only had to conclude that the plaintiff had not proven by a preponderance of the evidence that Piper Shores was negligent. Even if much or all of the plaintiff's evidence was uncontroverted the jury was not required to accept the plaintiff's version of the events if reasonable inferences would support an alternative conclusion. *Ma v. Bryan*, 2010 ME 55, ¶ 8, 997 A.2d 755. Based on the entirety of the evidence admitted at trial, the jury may have reasonably inferred that the defendants' actions were not negligent. A jury is permitted to draw all reasonable inferences from the evidence. *Garland v. Roy*, 2009 ME 86, ¶ 17, 976 A.2d 940, 945. The difficulty in obtaining a new trial pursuant to M.R.Civ.P. 59(a) is "precisely because 'a fact-finder, whether it be a jury or a court, is not required to believe witnesses, even if the testimony of

2

witnesses, be they experts or lay witnesses, is not disputed.'" *Dionne v. LeClerc*, 2006 ME 34, ¶ 15, 896 A.2d 923, 929. In the particular case at bar, the plaintiff's chief difficulty is that in her arguments she has not considered the evidence in its entirety nor has she established that the jury was compelled to find in her favor on each element of her claim.

Although the parties had stipulated that Waino Ray fell on ice and the resulting head injury from that fall on February 2, 2008 caused his death on February 4, 2008, Ms. Bennett still has the burden of proving negligence. "Whether a duty was breached and whether a defendant's conduct was reasonable under the circumstances are questions of fact for the jury." *Budzko v. One City Center Assoc. LP*, 2001 ME 37, ¶ 10, 767 A.2d 210 (2001). And, even if the jury could have reached a different result, the court cannot conclude there was no credible evidence to support the jury's verdict.

Under Maine law, the owner of property has a duty to use reasonable care to maintain the premises in a reasonably safe condition in light of the totality of the existing circumstances. However, a property owner does not guarantee the absolutely safety of its premises; its duty is to use ordinary case to ensure that the premises are reasonably safe, guarding against all reasonably foreseeable dangers. To prove negligence where snow and ice are involved, Ms. Bennett was required to prove at trial that it is more likely than not that: (1) there was an accumulation of ice on the premises that was a cause of Mr. Ray's injuries; (2) the ice condition had been present for a time of sufficient duration prior to Mr. Ray's injury to enable a reasonably prudent person to discover and remedy or warn of it; and (3) Piper Shores knew of the ice condition and did not correct or warn of it, or did not know of the ice condition but in the exercise of reasonable case

3

should have known of and corrected or warned of the condition. See Alexander, *Maine Jury Instruction Manual* § 7-64 (4th ed. 2011). With the exception of the first element, Ms. Bennett has failed to demonstrate that the jury was compelled to find in her favor on each of the second and third elements of her claim. See *Ma v. Bryan*, 2010 ME 55, ¶ 6, 997 A.2d at 758.

Although the parties had stipulated that Waino Ray fell on ice and the resulting head injury from that fall on February 2, 2008 caused his death on February 4, 2008, Ms. Bennett still has the burden of proving negligence. "Whether a duty was breached and whether a defendant's conduct was reasonable under the circumstances are questions of fact for the jury." *Budzko v. One City Center Assoc. LP*, 2001 ME 37, ¶ 10, 767 A.2d 210 (2001). And, even if the jury could have reached a different result, the court cannot conclude there was no credible evidence to support the jury's verdict.

Reviewing all of the evidence in its entirety and in a light most favorable to the verdict, *Provencher v. Faucher*, 2006 ME 9, ¶¶ 2, 6, 898 A.2d 404, 405, 406, the court concludes that the jury could have reasoned that although there was an accumulation of ice on the walkway at Piper Shores that was the cause of Mr. Ray's injuries, either (1) the ice condition had not been present for a time of sufficient duration prior to Mr. Ray's injuries to enable a reasonable person to discover and remedy or warn of it or (2) Piper Shores did not know of the ice condition and could not have not have known of and corrected or warned of the condition. Given the timeline of the events that unfolded on the late evening of February 1 and early morning hours of February 2, the jury was not compelled to find the second and third elements of negligence in plaintiff's favor.

4

Here, the jury could have reasonably inferred that Piper Shores did not know of the ice condition on the morning of February 2, 2008, until after Mr. Ray fell. The jury may have concluded that Piper Shores was exercising reasonable care on the morning of February 2 in light of the testimony of Richard Preston, Leland Murray and Lou Miller. Based on their testimony, the jury could have found that the surface of the accident site was maintained and treated between 8 and 10 p.m. on the evening of February 1, that at that time the precipitation was rain, and that the temperature was warming. The jury could have also found that there was no need to return to treat the surface at Piper Shores during the night and the next morning because the precipitation had stopped and the temperature went well above freezing.

The jury could also have found that Piper Shores' was acting reasonably by establishing priorities to ensure the safety of its residents, and that these priorities were to ensure that the roads in and out of the community were open for emergencies and that emergency exits remained open so emergency personnel and residents could enter and exit buildings. The jury could have found that the area where Mr. Ray fell was not a priority location. The jury could also have found that Mr. Preston, the maintenance and security staff person who came on duty at 7:45 a.m. on the morning of February 2, acted with reasonable care when he first attended to an emergency call, and then followed the established priorities by completing his interior rounds of checking that the emergency exits were clear, and by beginning to conduct his vehicle rounds to check the exterior of the building. Unfortunately, he was interrupted by a radio call for a fallen resident (Mr. Ray) before he could complete his exterior rounds. The jury could have found that under all these circumstances, including the

5

weather on February 1 and 2, the rising temperatures, the place of the fall was not a priority area, the location of sand and salt barrels including one near the front entrance adjacent to the site of Mr. Ray's fall, and the emergency rounds performed by Mr. Preston on the morning of February 2, that Piper Shores' conduct was reasonable and the defendants did not breach their duty to Mr. Ray.

The jury was not required to accept the evidence of plaintiff's safety expert on the issues of the reasonableness of the defendants' conduct or the duty owed to Mr. Ray by the defendants. The jury could have considered the policies and procedures of Piper Shores and how they were carried out on February 1 and 2 and concluded that Piper Shores did not act negligently. The jury was not compelled to find negligence in light of the entirety of the evidence.

Finally, although Bennett's motion for a new trial asserted that the jury's verdict must have been due to prejudice, bias, passion, or mistake of fact, Bennett has pointed to nothing in the record that might demonstrate prejudice other than the fact that the verdict was not in her favor. The "record is entirely devoid of any indication that the jury reached its verdict on any improper bias, and in the absence of 'any verifiable external manifestations' of such impropriety," this court must accept the verdict. *Ma v. Bryan*, 2010 ME 55, at ¶ 9, 997 A. 2d at 760.

Accordingly, the court concludes that there is no evidence on the record of any jury bias, prejudice, or misconduct; that there is no evidence to support a suggestion that the jury failed to follow the law; and that the jury's verdict is supportable by the entirety of the evidence.

The entry is:

Motion for a New Trial DENIED.

6

July 31, 2012

Joyce A. Wheeler, Justice

Plaintiff-Mark Randall Esq

Defendants (Remaining)- Nelson Larkins Esq

7